Kostas **DOUZINAS**, Nancy Douzinas, and Nautical Technology Corporation, Plaintiffs,

v.

**AMERICAN BUREAU OF SHIPPING, INC., ABS Group of Companies, Inc., and ABS InfoLink, Inc., Defendants,**

and

**ABS Nautical Systems, LLC, Nominal Defendant.**

C.A. No. 1496–N.

Court of Chancery of Delaware, New Castle County.

Submitted: Jan. 11, 2006.

Decided: Jan. 24, 2006.

**7.** *Gronenthal v. State,* 779 A.2d 876, 879 (Del. 2001).

**8.** *Cf. Hendricks v. State,* 871 A.2d at 1125–26.

Vernon R. Proctor, Kurt M. Heyman, Patricia L. Enerio, Proctor Heyman, L.L.P., Wilmington, DE, for Plaintiffs.

Steven J. Balick, John G. Day, Lauren E. Maguire, Esquire, Ashby & Geddes, Wilmington, DE; George F. Chandler, III, Robert G. Moll, Hill Rivkins & Hayden, L.L.P., Houston, TX; Robert G. Clyne, John J. Sullivan, Hill Rivkins & Hayden, L.L.P., New York City, for Defendants.

## OPINION

STRINE, Vice Chancellor.

### I.

The plaintiffs—Kostas Douzinas, Nancy Douzinas, and Nautical Technology Corporation (the "Douzinases")—are minority members of nominal defendant ABS Nautical Systems, LLC ("Nautical Systems"). The Douzinases accuse the managing member of Nautical Systems, defendant ABS InfoLink, Inc. ("ABS InfoLink"), of breaching fiduciary duties it allegedly owed to Nautical Systems and its members. The Douzinases also plead aiding and abetting, conspiracy, and unjust enrichment claims against affiliates of ABS InfoLink, defendants American Bureau of Shipping, Inc. and ABS Group of Companies, Inc. (the "ABS Affiliates"). All of the claims against the ABS Affiliates arise from the same pattern of behavior alleged against ABS InfoLink.

In their complaint, the Douzinases allege that Nautical Systems was formed by ABS InfoLink and themselves to combine in one entity their respective software products, which were complementary and designed to aid operators of ocean-going vessels in managing their operations. Nautical Systems, according to the Douzinases, was to be the venture through which the combined potential of the members' formerly separate software products would be exploited for their ratable benefit. To that end, the Douzinases allege that they contributed their software to Nautical Systems, as did ABS InfoLink. In exchange, the Douzinases were given a 25% interest in Nautical Systems, and ABS InfoLink obtained a 75% interest.[1]

Once Nautical Systems was formed, ABS InfoLink was named as the member that would manage the entity on a day-to-day basis. In the complaint, the Douzinases allege that ABS InfoLink injured Nautical Systems by covertly transferring the software that was to belong to Nautical Systems to the ABS Affiliates. After that was done, the ABS Affiliates are alleged to have distributed the software "at no charge to their customers in an effort to secure business for themselves, with no

---

1. *But see* note 27 infra (citing to § 2.08 of LLC Agreement that indicates that the Douzinases sold their software to *ABS InfoLink* for cash, a promissory note, and the retention of a 10% interest in certain assets).

remuneration or compensation to Nautical Systems."[2]

## II.

This matter is now before me because ABS InfoLink and the ABS Affiliates argue that the Douzinases' claims must be arbitrated, in accordance with § 10.01 of the Nautical Systems LLC Agreement that states:

> This Article 10 shall apply to any dispute arising under or related to this Agreement (whether arising in contract, tort or otherwise, and whether arising at law or in equity), including (a) any dispute regarding the construction, interpretation, performance, validity or enforceability of any provision of this Agreement or whether any Person is in compliance with, or breach of, any provisions of this Agreement, and (b) the applicability of this Article 10 to a particular dispute.... The provisions of this Article 10 shall be the exclusive method of resolving Disputes.[3]

In so arguing, the defendants rely heavily on the Supreme Court's decision in *Elf Atochem North America, Inc. v. Jaffari.*[4]

The Douzinases disagree, contending that their claims against ABS InfoLink involve claims for breach of fiduciary duty that do not require reference to the LLC Agreement for determination and are not subject to arbitration. As a result, they claim that the teaching of *Parfi Holding*

---

**2.** Douzinases Ans. Br. at 2–3.

**3.** LLC Agmt. § 10.01. The ABS Defendants have not argued, although they might have, that § 10.01(b) required that disputes about arbitrability be resolved by the arbitrator.

**4.** 727 A.2d 286 (Del.1999).

**5.** 817 A.2d 149 (Del.2002).

*AB v. Mirror Image Internet, Inc.*[5] is applicable here and preserves their right to prosecute their claims here.

■ One unusual factor in resolving this dispute, fortunately, does not create the difficulty that it might have. Section 11.10 of the LLC Agreement states "[e]xcept to the extent any provision hereof is mandatorily required to be governed by the [Delaware Limited Liability Company Act], this agreement is governed by and shall be construed in accordance with the law of the state of Texas...." This creates the odd situation where parties to an LLC domiciled in Delaware chose to have their LLC Agreement governed by another state's law, except when the Delaware LLC Act requires the application of Delaware law. Our state respects choice of law provisions when the law chosen has a material relationship to the matter at issue, a requirement that is satisfied here because Nautical Systems operated out of Texas.[6] The Nautical Systems LLC Agreement also calls for arbitration to take place in Texas, thereby implicating the Texas General Arbitration Act, which, like the Delaware Uniform Arbitration Act, is modeled after the Uniform Arbitration Act.[7]

■ Fortunately for me, the parties agree that there is no material difference between Texas and Delaware law regarding the issues before me. Like Delaware, Texas law favors arbitration and enforces

---

**6.** *J.S. Alberici Const. Co., Inc. v. Mid–West Conveyor Co., Inc.,* 750 A.2d 518, 520 (Del. 2000).

**7.** *See Tuco Inc. v. Burlington Northern R.R. Co.,* 912 S.W.2d 311, 315 (Tex.App.1995) ("the Texas General Arbitration Act is based on the Uniform Arbitration Act ... Article 238–4 of the Texas Act directs that it shall be construed to promote uniformity with the law of other states enacting equivalent provisions").

contracts to arbitrate.[8] As in Delaware, Texas courts resolve doubts about the arbitrability of a dispute in favor of arbitration.[9] Moreover, the primary cases relied upon by the parties in their briefs, particularly by the Douzinases, are from Delaware. For that reason, I do not attempt to parse out the differences between the states' laws, as I perceive there to be none, and instead focus my analysis on (1) the specific terms of the LLC Agreement at issue and (2) the two major decisions that the parties joust over, both of which were decided by our Supreme Court. Where relevant, I cite Texas precedent to demonstrate the consistency of that state's law with the outcome I reach.

## III.

■ Having set forth the approach I am taking, I will now set forth the reasons I reject the Douzinases' arguments. For starters, this case is much more like *Elf Atochem* than *Parfi*. In *Elf Atochem*, the Supreme Court clearly indicated that a broad arbitration provision in an LLC Agreement could encompass breach of fiduciary duties claims raised by a member.[10] The different question in *Parfi* was whether an underwriting agreement's broad arbitration clause could encompass fiduciary duty claims raised by a stockholder of a corporation when those claims were based on the identical conduct that was an alleged breach of the underwriting agreement and grounds for a claim of fraudulent inducement into that agreement.[11] The Supreme Court held that it was error for this court to find the fiduciary duty claims arbitrable, despite the obvious inefficiency of allowing the procession of these intertwined claims in two separate forums.[12] Because the fiduciary duty claims did not depend in any manner on the underwriting agreement, the Supreme Court found they were not arbitrable.[13] In so ruling, the Supreme Court was clearly influenced by the facts that the arbitration agreement was not contained in the basic contract of the entity—the corporation's charter—that gave rise to the fiduciary relationship and that, as a result, other stockholders who were not parties to the underwriting agreement would have been able to litigate the exact claims the plaintiffs would have been required to arbitrate.[14]

As another distinction, *Parfi* addressed fiduciary duty claims asserted in the corporate, rather than alternative entity, context. This is important because alternative entity statutes, such as Delaware's Limited Liability Company and Limited Partnership Acts, permit the contracting parties to expand or restrict "the member's or manager's or other person's duties [including fiduciary duties] and liabilities ... in a limited liability company agreement."[15] As a result, in the alternative entity context, it is frequently impossible to decide fiduciary duty claims without close examination and interpretation of the governing instrument of the entity giving

8. *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) (stating that "[f]ederal and state law strongly favor arbitration").

9. *Id.* (stating that "[c]ourts must resolve any doubts about an agreement to arbitrate in favor of arbitration").

10. *Elf Atochem*, 727 A.2d at 295.

11. *Parfi*, 817 A.2d at 156–7.

12. *Id.* at 155–6.

13. *Id.* at 157.

14. *Id.*

15. 6 *Del. C.* § 18–1101(c)(2). The same is true for restricting and expanding a partner's duties in a partnership agreement. 6 *Del. C.* § 17–1101(d).

rise to what would be, under default law, a fiduciary relationship.[16]

For these reasons, the Supreme Court explicitly distinguished in *Parfi* between the case before it, involving a separate underwriting agreement not binding on all the stockholders of the corporation, and the situation in *Elf Atochem*. As summarized by *Parfi* itself, the LLC agreement in *Elf Atochem* required "parties to submit purported fiduciary duty claims to arbitration since the series of agreements created a system setting for[th] the governance and operation of the parties' joint venture." [17]

As the various ABS defendants contend, the Nautical Systems LLC Agreement directly implicates this reasoning, as it creates the governance system for the LLC and establishes the framework governing *all* of the members' rights and duties towards one another. That is, the Nautical Systems' LLC Agreement reflects an exercise in contractual freedom of the kind that *Elf Atochem* recognized as central to the Delaware Limited Liability Company Act, which permits the contractual elimination of default principles of fiduciary duty.[18] Similarly, Texas courts have recognized this contractual freedom and referred fiduciary duty disputes to arbitration when confronted with broad arbitration clauses.[19]

In § 10.01 of Nautical Systems's LLC Agreement, the parties agreed not only to arbitrate claims "arising under" that Agreement but also claims "related to" that Agreement "whether arising in contract, tort or otherwise, and whether arising at law or in equity." That broad arbitration provision must be honored by enforcement.

The Douzinases attempt to argue that the clause only covers claims arising under the LLC Agreement, but that reads the broad term "related to" out of the contract, as well as the broad reference to claims arising in "contract, tort or otherwise" or arising in "equity." [20] Not only that, the Douzinases' argument that fiduciary duty claims do not relate to the LLC Agreement is belied by the Agreement itself.

To briefly show why, it is important to recognize that the Douzinases' contention that ABS InfoLink is being sued solely as a "manager" and not as a "member" of the LLC is just that—a contention—and not an obviously true statement. Although it is correct that ABS InfoLink was named as the manager of the LLC, this does not necessarily mean that the provisions of the LLC Agreement dealing with members are irrelevant. Because ABS InfoLink is sued as a result of its actions as manager, the Douzinases claim that the provision of the LLC Agreement stating that the relation among members is "strictly contractu-

---

16. Our recent jurisprudence is replete with examples of cases like this. *See, e.g., Flight Options Int'l, Inc. v. Flight Options, LLC,* 2005 WL 2335353 (Del.Ch. Sept. 20, 2005); *Gelfman v. Weeden Investors, L.P.,* 859 A.2d 89 (Del.Ch.2004); *Miller v. Am. Real Estate Partners, L.P.,* 2001 WL 1045643 (Del.Ch. Sept.6, 2001); *R.S.M., Inc. v. Alliance Capital Mgmt. Holdings, L.P.,* 790 A.2d 478 (Del.Ch.2001); *Continental Ins. Co. v. Rutledge & Co., Inc.,* 750 A.2d 1219 (Del.Ch.2000); *Sonet v. Timber Company, L.P.,* 722 A.2d 319 (Del.Ch.1998).

17. *Parfi,* 817 A.2d at 160 n. 42 (citing *Elf Atochem,* 727 A.2d at 288, 293–95).

18. 6 *Del. C.* § 18–1101(c)(2).

19. *See Capital Income Properties–LXXX v. Blackmon,* 843 S.W.2d 22, 23 (Tex.1992).

20. For this reason, it is passing strange that the Douzinases allege that their claims are not arbitrable because some of them sound in tort (e.g., conspiracy and conversion) or in equity (breach of fiduciary duty).

al in nature" and that the Members "acknowledge ... that no Member owes the Company or any other Member a fiduciary duty ..." does not bar its claims.[21]

To resolve whether that is correct clearly requires consideration of the LLC Agreement's other terms. These include explicit provisions indicating that:

- All power and authority with respect to the management of the business and affairs of the LLC is vested in a board of directors;[22]
- The board shall be comprised of representatives of the Members and the Members shall act collectively through the Board of Directors;[23]
- Representatives appointed to the Board shall represent and owe duties only to the Member who designated them and not to the Company or any other Member;[24]
- The Members agree that the Company is a Member managed limited liability company for purposes of the Delaware LLC Act;[25]
- The power of the Board to act collectively as Members can be delegated to the Member that is designated as Manager, and actions within that delegation are binding on the Members.[26]

Stated summarily, by its own plain terms, the LLC Agreement is managed by its Members through a Board, and as to certain delegated tasks, through the Member, ABS InfoLink, designated as Manager. For that reason, the Douzinases' blithe contention that the provisions of the LLC Agreement limiting the duties of Members have no application to its claims against ABS InfoLink is unconvincing. At the very least, the provisions of the LLC Agreement must be considered and interpreted carefully in addressing the Douzinases' claims.

One can see why by citing other provisions of the LLC Agreement that are clearly implicated by the Douzinases' claims. For example, the LLC Agreement has detailed provisions regarding the handling of confidential information, see § 3.06, and the ability of Members to engage in competition, see § 6.05. These provisions are directly implicated by the Douzinases' serious accusations that ABS InfoLink transferred Nautical Systems's intellectual property to the ABS Affiliates, thereby directly undercutting Nautical Systems's own competitive position. Indeed, § 6.05 specifically states "the Members and their Affiliates shall be prohibited from competing with the Company in the licensing of marine vessel management systems software or ... other services with respect to the marine management systems software owned or licensed by the Company; provided, the preceding provision shall not apply to or constitute any restriction on American Bureau of Shipping, a New York Corporation." Of course, the Douzinases bring claims against Affiliates of ABS InfoLink—including defendant American Bureau of Shipping which expressly is not restricted by § 6.05—that involve the alleged misuse of Nautical Systems's software to benefit the ABS family of companies, to Nautical Systems's detriment.[27]

---

21. LLC Agmt. § 6.05(c).

22. LLC Agmt. § 6.01.

23. LLC Agmt. § 6.01.

24. LLC Agmt. § 6.02(a)(iii).

25. LLC Agmt. § 6.02(m).

26. LLC Agmt. § 6.04.

27. The terms of the LLC Agreement may also have a bearing in determining exactly what software rights Nautical Systems owns. Under § 2.08, it is stated that the Douzinas interests received $1.5 million and a promissory note for $2 million in return for granting ABS

Not only that, the LLC Agreement contains an exculpatory provision limiting the liability of ABS InfoLink in its capacity as Manager. That provision plainly states that the Managers "shall not be liable to the Company [or] any other Member ... for any acts or omissions that do not constitute gross negligence or willful misconduct ... of the Manager."[28] The ABS defendants have the right to rely upon these and other provisions of the LLC Agreement in defending the claims against them.[29]

By any measure, the Nautical Systems LLC Agreement creates a "system setting for[th] the governance and operation of the parties' joint venture."[30] The broad terms of its arbitration clause, which requires the arbitration of any dispute relating to the Agreement, clearly encompass the Douzinases' claims.[31] Any person adjudicating those claims would be required to interpret various provisions of the LLC Agreement in order to fairly determine the breadth and nature of fiduciary duties, if any, owed by ABS InfoLink as the Member designated to be Manager of Nautical Systems. As in *Elf Atochem*, this court's duty is to respect the contract freely entered into by all the members of Nautical Systems, which here requires referring the Douzinases' claims to arbitration, the forum chosen by the members.[32]

---

InfoLink a 90% interest in certain assets described in an exhibit to the LLC Agreement. The ABS defendants contend that these assets include software put in issue by the Douzinases' claims.

**28.** LLC Agmt. § 6.04(d).

**29.** At oral argument, the Douzinases contended that if their claims were permitted to proceed in this court, then the ABS defendants would be put to a bizarre Hobson's choice. If the ABS defendants decided to rely upon the exculpatory or other provisions in the LLC Agreement as a defense, the Douzinases argue that the ABS defendants would thereby waive any right to arbitration of issues of contractual interpretation. If the ABS defendants decided not to rely upon those provisions, the Douzinases say that this court would have to decide the Douzinases' claims without consideration of the LLC Agreement's exculpatory provision, or other relevant provisions, leaving it to an arbitrator to determine whether this court's judgment involved contractually exculpated behavior. This unusual argument, if anything, demonstrates that the Douzinases' claims clearly relate to the LLC Agreement, as the use of the broad term "relate to" is obviously intended to avoid inefficient and unfair scenarios of that kind.

**30.** *Parfi*, 817 A.2d at 160 n. 42 (citing *Elf Atochem*, 727 A.2d at 288).

**31.** *See Blackmon*, 843 S.W.2d at 23.

**32.** For the sake of completeness, it is worth conceding that the arbitration clause in the LLC Agreement at issue in *Elf Atochem* specifically "included" within the class of claims to be arbitrated, any "controversy or dispute arising out of ... the action or inaction of any Member of Manager" under the LLC Agreement. *Elf Atochem*, 727 A.2d at 288. That distinction is not material, however. The reasoning of the Supreme Court did not, in my view, depend on that precise language. In *Elf Atochem*, the Supreme Court recognized that words like "relate to" are to be read broadly. Therefore, the Supreme Court used those words in the *Elf Atochem* to hold that claims under a separate contract, a distributorship agreement, were all subsumed under the forum selection clause in the LLC Agreement, which covered any claim "related to" the LLC Agreement and limited judicial proceedings to ones involving compulsion of arbitration or enforcement of an arbitration award. *Id.* at 294. In this case, the arbitration clause itself (unlike the arbitration clause at issue in *Elf Atochem*, which was separate from the admittedly related forum selection clause) broadly covers "any dispute related to the" LLC Agreement. This broad language easily encompasses the Douzinases' claims because the language clearly covers their claims of managerial misconduct, all of which obviously relate to the governance system established by the LLC Agreement. The absence of the more specific language regarding manager action or inaction involved in *Elf Atochem* is therefore irrelevant.

Finally, the Douzinases claim that they need not arbitrate against the ABS Affiliates because those Affiliates were not Members of Nautical Systems. That is not correct. It is indisputable that the claims against the ABS Affiliates all involve the same course of improper conduct alleged against ABS InfoLink. The Douzinases may not press claims that involve identical factual contentions in two separate forums simply by sweeping into their complaint the Affiliates of ABS InfoLink. Under abundant authority, non-signatories are permitted to compel signatories to arbitrate disputes under a theory of equitable estoppel.[33] One circumstance that frequently warrants such estoppel is "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." [34] That is the case here, and to refuse to compel arbitration for claims against the ABS Affiliates would render the arbitration between the signatories meaningless and thwart the state and federal policy in favor of arbitration.[35]

## IV.

For the foregoing reasons, the ABS defendants are entitled to an order compelling the Douzinases to arbitrate their claims in accordance with the Nautical Systems LLC Agreement. The parties shall confer and submit an implementing final judgment within five days.

**33.** *See Ishimaru v. Fung,* 2005 WL 2899680 (Del.Ch. Oct.26, 2005); *Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 527 (5th Cir.2000); *see also MS Dealer Service Corp. v. Franklin,* 177 F.3d 942 (11th Cir.1999); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753 (11th Cir.1993); *In re Kaufman and Broad Mortg. Co.,* 2005 WL 1225014 (Tex. App. May 25, 2005).

**34.** *MS Dealer Service,* 177 F.3d at 947 *quoted in Grigson,* 210 F.3d at 527.

**35.** *Id.*