Filed 3/23/16  Bard v. Moe CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| STEPHEN D. BARD,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL T. MOE et al.,<br><br>        Defendants and Appellants. | A145120<br><br>(San Mateo County<br>Super. Ct. No. CIV531856) |

Stephen D. Bard and Michael T. Moe are the majority partners of GSV Asset Management, LLC (GSVAM).  Bard has sued Moe along with two of his business associates, Mark W. Flynn and Mark D. Klein, for interference with contract, tortious interference with prospective economic advantage, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty and fraud.  The crux of Bard's complaint is that Moe, Flynn, and Klein (collectively defendants) conspired to divest Bard of his 30 percent membership interest in GSVAM.

Defendants moved to compel arbitration of Bard's lawsuit pursuant to an arbitration clause in GSVAM's operating agreement.  The trial court denied the motions to compel.  The court reasoned Flynn and Klein are not signatories to the operating agreement, and Bard was not equitably estopped from refusing to arbitrate because his claims did not rely on any contractual obligation in the agreement.  While Moe is a signatory to the agreement, Bard's only claim against him seeks a preliminary injunction and temporary restraining order, and the court found it retained vestigal jurisdiction to grant such provisional remedies.

Defendants now appeal, arguing the trial court erred in concluding Bard was not equitably estopped from refusing to arbitrate his claims against Flynn and Klein, and in finding Bard was not required to arbitrate his claims for equitable relief against Moe. We reverse.

## I. BACKGROUND

In August 2010, Bard and Moe formed NeXt Asset Management, LLC, which was later renamed GSVAM, an SEC registered investment advisor. Moe received a 65 percent interest in GSVAM and Bard received a 30 percent interest.[1] Flynn was later hired as an employee of GSVAM, and Klein was hired as a paid consultant. In forming GSVAM, Moe and Bard executed an operating agreement. One clause of the agreement states Moe and Bard agree to arbitrate disputes arising out of the agreement.

In 2011, Moe and Bard formed GSV Capital, a publicly traded fund that invested in late-stage private companies. GSVAM would provide the management services for GSV Capital. Bard took on a number of management roles at GSV Capital, including chief financial officer (CFO). When GSV Capital's initial public offering was in danger of falling short of NASDAQ's $50 million minimum for public listing, Bard and his wife bought more than $1 million in stock and raised an additional $2 million by contacting friends and family.

In December 2014, Bard filed this action against Moe, Flynn, and Klein. The complaint makes the following allegations: Beginning in 2011, GSVAM made cash distributions to Moe to cover his personal expenses, including credit card charges at various Las Vegas and New York night clubs and restaurants. Upon learning of this, Bard confronted Moe and demanded he stop. GSV Capital's governance committee investigated the situation and concluded Moe had used GSVAM assets for his personal use. In April 2014, Moe and Flynn approved Bard's removal as CFO of GSV Capital. Around this time, using GSVAM resources, Moe, Flynn, and Klein formed a new

---

[1] Ljuben B. Pampoulov, who is not a party to this case, received a 5 percent interest.

2

"family" of competing entities, including GSV Holdings, GSV Partners, and GSV iQ. According to Bard, these entities also took GSVAM business opportunities and diluted his economic interest in GSVAM.

The complaint asserts four claims against Flynn and Klein: interference with contract, tortious interference with prospective economic advantage, aiding and abetting fiduciary duty, and aiding and abetting fraud. The complaint also asserts a single claim against Moe for breach of fiduciary duty. In connection with this last claim, Bard sought only provisional relief, specifically a preliminary injunction and temporary restraining order enjoining Moe from taking cash from GSVAM, operating competing for-profit business entities, using the GSV name and mark without compensation, and using GSVAM human and financial resources to establish competing entities and to satisfy personal debts.

A few days after Bard filed his complaint, Moe filed a demand for arbitration against Bard, asserting claims for "Conversion/Embezzlement" and declaratory relief. In the arbitration proceedings, Bard filed a counterclaim asserting claims against Moe for breach of the operating agreement, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, conversion, fraud and deceit, and accounting.

In January 2015, Moe and Flynn filed a motion to compel arbitration or stay the proceedings. Moe argued Bard's claim against him for a preliminary injunction and temporary restraining order should be decided by an arbitrator due to the express language of the operating agreement and because JAMS (Judicial Arbitration and Mediation Services) rules authorized arbitrators to grant provisional relief. Flynn argued the claims against him were inextricably intertwined with the operating agreement and thus, under the doctrine of equitable estoppel, the claims against him should be arbitrated even though he did not sign the operating agreement. In February 2015, Klein filed a motion to compel arbitration on essentially the same grounds as Flynn.

The trial court denied both motions. As to Moe, the court stated it retained vestigial jurisdiction to grant a provisional remedy on the grounds the award to which Bard may be entitled might be rendered ineffectual without provisional relief. The court

3

also rejected Flynn's and Klein's equitable estoppel arguments. The court reasoned Bard's claims against Flynn and Klein did not rely on any of the terms of the operating agreement and merely making reference to an agreement within an arbitration clause was not sufficient to require arbitration.

Bard later moved for a preliminary injunction against Moe. The trial court granted the motion, finding Bard had demonstrated a likelihood of success on the merits. Among other things, Bard showed Moe had taken cash from GSVAM that far exceeded his 65 percent share, set up competing business entities, and used GSVAM assets to bankroll competing entities and finance his personal debts. The court also found the balance of harms favored Bard, since without a preliminary injunction, Moe could divert funds such that GSVAM would have no value or merely nominal value. Moe was enjoined from engaging in various activities "[u]ntil the rendering of a final award" in the pending arbitration.

Defendants subsequently appealed the trial court's order denying their motions to compel arbitration, but not its order granting the preliminary injunction. While defendants' appeal was pending, an arbitration award was issued denying all counterclaims asserted by Bard in the arbitration. The arbitrator also denied Moe's claims for conversion/embezzlement and declaratory relief.

## II. DISCUSSION

### A. *Moe's Motion to Compel Arbitration*

As an initial matter, the parties dispute whether the trial court had jurisdiction to consider Bard's claim against Moe for breach of fiduciary duty, which sought only a preliminary injunction. The matter is moot. While the trial court entered a preliminary injunction against Moe, that preliminary injunction has since been dissolved. The preliminary injunction was to last only until "the rendering of a final award" in the arbitration, and a final arbitration award was issued on December 18, 2015. Accordingly,

4

we need not and do not reach the issue of whether the court had authority to issue the injunction, or whether the injunction is voidable.[2]

## B. *Flynn's and Klein's Motions to Compel Arbitration*

Flynn and Klein assert the trial court erred in denying their motions to compel arbitration of Bard's claims against them. While Flynn and Klein are not signatories to the operating agreement, and thus are not bound by its arbitration clause, they contend Bard is equitably estopped from refusing to arbitrate his claims. We conclude equitable estoppel requires Bard to arbitrate all of his claims against Flynn and Klein.

To the extent there is no conflicting extrinsic evidence, the question of whether an arbitration agreement applies to a controversy is a question of law, which we review de novo.[3] (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1670.) The Federal Arbitration Act (9 U.S.C. § 10 et seq.; FAA) "pre-empts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' " (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478.) However, since parties must consent to arbitration, courts apply state contract law to determine whether a party has agreed to arbitrate, "while giving due regard to the federal policy favoring arbitration." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) "The FAA obligates states to treat arbitration agreements the same as other types of contracts, and prohibits them from disfavoring or burdening arbitration agreements compared to other types of contracts." (*Turtle Ridge Media Group, Inc. v. Pacific Bell Directory* (2006) 140 Cal.App.4th 828, 832.)

---

[2] At oral argument, counsel argued we should decide this issue, even though it is moot, because it presents a novel issue of law. We decline to do so.

[3] Other states have applied an abuse of discretion standard to determine whether a trial court properly applied equitable estoppel principles, but California courts have declined to adopt such an approach. (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 226, fn. 9 (*Goldman*).)

In this case, the operating agreement states it shall be governed by the laws of Delaware. But as the trial court appeared to conclude, there is no appreciable difference in California's and Delaware's approach to the legal principles at issue. (See *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox* (Del. Ch., Aug. 22, 2006, Civ.A.2037-N) 2006 WL 2473665 (*Wilcox*); *Goldman*, *supra*, 173 Cal.App.4th 209.) Both California and Delaware, along with a number of other jurisdictions, allow a nonsignatory to an arbitration agreement to compel a signatory to the agreement to arbitrate under a theory of equitable estoppel. (*Wilcox*, at p. *4; *Goldman*, at pp. 217–218.) The rationale for applying equitable estoppel is that a signatory to an arbitration agreement "cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." (*Grigson v. Creative Artists Agency L.L.C.* (5th Cir. 2000) 210 F.3d 524, 528.)

The test for applying equitable estoppel under both California and Delaware law is essentially the same. First, equitable estoppel applies when the signatory to the agreement with the arbitration clause must rely on the terms of that agreement in asserting claims against the nonsignatory. (*Goldman*, *supra*, 173 Cal.App.4th at p. 218; *Wilcox*, *supra*, 2006 WL 2473665 at p. *5.) California courts have stated that merely making reference to an agreement with an arbitration clause is not enough to satisfy this first test. (*Goldman*, at p. 218.) Likewise, Delaware courts have found this test applied where a plaintiff's claim is "intertwined with or touches" on the agreement. (*Wilcox*, at p. *5.) Second, equitable estoppel applies where the signatory to the agreement raises allegations of substantially interdependent concerted misconduct by a nonsignatory and one or more signatories to the agreement. (*Goldman*, at pp. 218–219; *Wilcox*, at p. *5.) In analyzing this test, California courts have stated "allegations of substantially interdependent concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement." (*Goldman*, at p. 219, fn. omitted.)

6

Flynn and Klein argue this action is analogous to *Wilcox*, *supra*, 2006 WL 2473665. In that case, Wilcox sold Fetzer his interest in their court reporting services business, Wilcox & Fetzer (W&F). (*Id.* at p. *1.) The stock purchase agreement, which contained an arbitration clause, gave W&F a license to any and all rights to the business's name and " 'any other derivative or style thereof.' " (*Ibid.*) Wilcox later joined Corbett and Associates, which changed its name to Corbett & Wilcox (C&W). W&F sued C&W and Wilcox, alleging they used a confusingly similar trade name, and C&W moved to compel arbitration pursuant to the stock purchase agreement. (*Id.* at p. *2.) Although C&W was not a party to the agreement, the court held W&F was equitably estopped from refusing to arbitrate. The court reasoned equitable estoppel applied because W&F's common law trade name claim was intertwined with the stock purchase agreement, since any analysis of W&F's right to the trade name was contingent on whether W&F gave away its right through the stock purchase agreement. (*Id.* at p. *5.) The court also found equitable estoppel applied because W&F alleged concerted misconduct by both a nonsignatory (C&W) and a signatory (Wilcox). (*Id.* at p. *6)

Bard counters that *Goldman*, *supra*, 173 Cal.App.4th 209, controls the outcome here. In *Goldman*, the plaintiffs sued their former accountants, lawyers, and investment advisers for inducing them to invest in fraudulent tax shelter schemes. (*Id.* at p. 213.) As part of one of the schemes, the plaintiffs and the investment advisers joined limited liability companies with standard operating agreements which contained broad arbitration clauses. (*Ibid.*) The accountants and lawyers, who were not parties to the agreements, sought an order compelling arbitration on equitable estoppel grounds. (*Ibid.*) The trial court orders denying the motions to compel arbitration were affirmed on appeal. (*Id.* at p. 214.) The court rejected the contention that equitable estoppel applied because the plaintiff's allegations presupposed the existence of the operating agreements with the arbitration clause. (*Id.* at p. 231.) Presuming the existence of an agreement was not enough. (*Ibid.*) The plaintiffs needed to actually rely on the terms and obligations of the agreement for equitable estoppel to apply. (*Ibid.*) The court also rejected the contention that allegations of concerted misconduct by signatories and nonsignatories, standing

7

alone, was a proper basis for applying equitable estoppel. (*Id.* at p. 233.) The plaintiffs also needed to rely on the operating agreements to make their claims against the accountants and lawyers in order for the accountants and lawyers to invoke equitable estoppel. (*Ibid.*)

Turning to the instant action, we consider the application of equitable estoppel to each of Bard's four claims: interference with contract, tortious interference with prospective economic advantage, aiding and abetting breach of fiduciary duty, and aiding and abetting fraud. In doing so, we compare the allegations of the complaint with terms of the operating agreement to determine whether Bard's claims are so intertwined with and dependent on the agreement that the agreement's arbitration clause should be given effect.

Bard's first claim against Flynn and Klein is for interference with contract. The elements of that claim are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) In his complaint, Bard asserts Flynn and Klein prevented performance under the operating agreement and made performance more expensive and difficult. Contrary to Bard's contentions, this claim does not merely presuppose the existence of the operating agreement. To determine whether there was an actual breach or disruption of the contractual relationship, one would need to assess the operating agreement's terms and the obligations they imposed upon Bard and Moe. Accordingly, this claim is subject to arbitration.

Similar reasoning applies to Bard's second cause of action for tortious interference with prospective economic advantage. As to this claim, Bard alleges Flynn and Klein conspired with Moe to establish several for-profit businesses to compete with GSVAM, all of which were intended to trade-off the "GSV" name, mark, goodwill, and reputation. Bard further alleges this wrongful conduct disrupted Bard and Moe's economic relationship, causing Bard harm. The validity of this claim is inextricably intertwined

8

with the terms of the operating agreement. Section 4.5 of the agreement prohibits Moe and Bard from engaging in any activity that is competitive with the actual or proposed business of GSVAM, but allows them to engage in activities similar to those in which the company engages provided those activities do not prevent them from carrying out their duties to GSVAM. Moreover, restrictions on competitive activities may be waived under certain circumstances. As this claim is dependent on the duties imposed by the operating agreement, equitable estoppel applies to it.

As to Bard's claim for aiding and abetting breach of fiduciary duty, Bard asserts Moe breached his fiduciary duty to Bard by, among other things, taking cash from GSVAM far in excess to that which he was otherwise entitled, setting up competing businesses, using the "GSV" name and mark without licensing or compensation, and removing Bard as a manager from GSVAM. Bard further alleges Flynn and Klein gave substantial assistance and encouragement to Moe in perpetrating these breaches. "[I]t is frequently impossible to decide fiduciary duty claims without close examination and interpretation of the governing instrument of the entity giving rise to what would be, under default law, a fiduciary relationship." (*Douzinas v. American Bureau of Shipping, Inc.* (Del. Ch. 2006) 888 A.2d 1146, 1149–1150, fn. omitted.) Such is the case here. As discussed above, Bard's allegations concerning competing business ventures are intertwined with the terms of the operating agreement, as are his allegations that Moe withdrew money from the company for personal use. The operating agreement contains several provisions concerning distributions and allocations of income. It also limits the liability of GSVAM's members for various acts or omissions, except where they are the result of fraud and willful misconduct. Thus, this claim too is subject to arbitration.

Bard's last claim for aiding and abetting fraud is also intertwined with the operating agreement. Bard alleges that in entering the partnership to form GSVAM, Moe falsely represented Bard would be a 30 percent member and that the two would share in the profits of GSVAM pursuant to the membership interests. Bard further alleges he reasonably relied on Moe's representations and invested more than $1 million in GSVAM and GSV Capital, taking on the majority of the risk. According to Bard, Flynn

9

and Klein knew Moe was perpetrating fraud and gave him substantial assistance and encouragement. Like Bard's other claims, resolution of this claim requires an analysis of the terms of the operating agreement, specifically its provisions concerning the allocation of profits. Accordingly, the claim is subject to arbitration.

### III. DISPOSITION

The trial court's order denying defendants' motion to compel arbitration is reversed. We find Bard's claim against Moe is moot, and Bard's claims against Flynn and Klein are subject to arbitration. Moe, Flynn, and Klein shall recover their costs on appeal.

                                _____

                                Margulies, J.

We concur:


_____

Humes, P.J.


_____

Banke, J.


A145120