NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1580-15T1

KONSTANTINE H. ZOGRAFOS,
individually and as a
shareholder in SOZA CLINIC,
LLC,

 Plaintiff-Appellant,

v.

DR. ANTHONY WEHBE, individually
and as a shareholder in SOZA
CLINIC, LLC,

 Defendant-Respondent.
____________________________________

 Submitted September 11, 2017 – Decided September 18, 2017

 Before Judges Sabatino and Ostrer.

 On appeal from Superior Court of New Jersey,
 Law Division, Gloucester County, Docket No.
 L-1362-14.

 Gilmore & Monahan, attorneys for appellant
 (Angela M. Koutsouris, on the briefs).

 Subranni Zauber, LLC, attorneys for respondent
 (William P. Rubley, on the brief).

PER CURIAM

 Plaintiff in this business dispute appeals the Law Division's

October 30, 2015 order. The order denied plaintiff's motion to
reopen this civil action, which the court had dismissed a year

earlier pursuant to a contractual binding arbitration provision.

The order also denied plaintiff's request for leave to file an

amended complaint, to compel defendant to produce additional

documents, and for counsel fees. For the reasons that follow, we

affirm.

 We recite only the most pertinent background.

 Defendant Anthony Wehbe is a physician. Through various

related business entities, defendant and other individuals

established several weight loss clinics in New Jersey and

Pennsylvania. The weight loss establishments were known and

marketed as the "Soza" clinics. Among these business enterprises

were two limited liability companies: Soza Northeast, LLC, formed

in Pennsylvania in 2012, and Soza Clinic, LLC, formed in Delaware

in 2013. Dr. Wehbe directly or indirectly held ownership interests

in these enterprises. Plaintiff Konstantine Zografos, a friend

of Dr. Wehbe and who attended college with him, began working for

Soza Northeast, LLC in 2012.

 Initially, Dr. Wehbe paid for many of the clinics' expenses

through charges on his personal American Express credit card.

According to plaintiff, in the spring of 2013, American Express

reduced the monetary limit on Dr. Wehbe's credit card. In order

to maintain the operations, Dr. Wehbe asked plaintiff to place

 2 A-1580-15T1
business charges on plaintiff's own credit card. Plaintiff

willingly did so for several months, until such time as Dr. Wehbe's

credit improved and he began using his own credit card again. Dr.

Wehbe reimbursed plaintiff for a portion of the amounts that had

been charged on plaintiff's card. Plaintiff characterizes the

sums charged on his card as a "loan," although the arrangement was

not memorialized in a written loan agreement.

 The weight loss business entities were reorganized in 2013,

when Soza Clinic, LLC was formed under Delaware law. As part of

the reorganization, plaintiff was assigned a fourteen percent

interest in that LLC. The reorganization documents included an

Operating Agreement and a Reorganization Plan.1 A separate

Investment Agreement, to which plaintiff was not a party, reflected

the new capital contribution of a third party.

 Plaintiff did not make a contemporaneous capital contribution

in exchange for his equity interest in Soza Clinic, LLC. Instead,

defendant asserts that the unreimbursed portion of plaintiff's

prior credit card debts were deemed by agreement to be the

consideration for plaintiff's equity share. Plaintiff, however,

1
 The copies of these documents supplied in the Joint Appendix are
unsigned. However, plaintiff admits in his proposed amended
verified complaint that he "reluctantly signed" the agreements,
but claims that he was not supplied with a "fully signed copy" of
them. For purposes of this opinion, we shall presume, as the trial
court did, that the agreements were mutually executed.

 3 A-1580-15T1
disputes that characterization. He instead contends that his

equity share was granted in exchange for the uncompensated or

undercompensated services he provided to the business as an

employee. He maintains that the unreimbursed charges on his credit

card continued to be a loan, which defendant was obligated to

repay in full.

 After the clinics sustained financial problems, plaintiff

filed a verified complaint and order to show cause in the Law

Division in October 2014 against Dr. Wehbe. The complaint sought

various forms of relief for plaintiff, in both his individual

capacity and as a shareholder of Soza Clinic, LLC. Judge Anne

McDonnell immediately ordered certain temporary measures,

including placing restraints on the distribution of company

assets.

 Defendant thereafter moved to dissolve the restraints and to

dismiss the lawsuit for lack of jurisdiction, citing a mandatory

arbitration provision within the Operating Agreement. That

provision, set forth in Section 12.8, prescribes as follows:

 12.8 Arbitration: Dispute Resolution. Any
 dispute, claim or controversy arising out of
 or relating to this Agreement or the breach,
 termination, enforcement, interpretation or
 validity hereof, including the determination
 of the scope or applicability of this
 agreement to arbitrate, shall be resolved
 through final and binding arbitration in
 Philadelphia, Pennsylvania. The arbitration

 4 A-1580-15T1
 shall be administered by either JAMS pursuant
 to its Comprehensive Arbitration Rules and
 Procedures or by the American Arbitration
 Association in accordance with the applicable
 rules of the American Arbitration Association
 then in effect. Judgment on the arbitration
 award may be entered in any court having
 jurisdiction. This clause shall not preclude
 parties from seeking provisional remedies in
 aid of arbitration from a court of appropriate
 jurisdiction. Before either party may proceed
 to arbitration, he or it shall first provide
 each other party with 30 days prior written
 notice explaining the nature of the dispute
 and an opportunity to cure said alleged
 breach.

 [(Emphasis added).]

 Before ruling on the jurisdictional motion, Judge McDonnell

dissolved the temporary restraints. However, on October 9, 2014

she ordered defendant to undertake certain actions, including to

perform an accounting of the income and expenditures of Soza

Clinic, LLC, and to make the business's books and records available

for review. The judge directed defendant to pay eighty-six percent

of the costs of the accounting, and for plaintiff to bear the

remaining fourteen percent.

 After hearing oral argument, Judge McDonnell granted

defendant's motion for dismissal, in anticipation that the

parties' dispute would be resolved through binding arbitration.

In her bench opinion on October 29, 2014, the judge made the

following key observations:

 5 A-1580-15T1
 [Section] 12.8 of the Operating Agreement
 does include what I would describe as a broad
 arbitration clause. I think it does permit
 the plaintiff to seek Court relief, as they
 have done in this matter. But, I found no
 reason to continue the restraints. I'm
 satisfied that I've set up a process whereby
 there will be an accounting, and the
 accountant will be paid. And, that there is
 no need for me to continue to keep this matter
 open.

 The Court is always open in the event
 that something emergent arises. But, I am
 satisfied that, based on the Operating
 Agreement, and the broad arbitration language,
 and the fact that it's construed consistent
 with Delaware law, which like New Jersey law,
 strongly favors the enforcement of the
 arbitration provision.

 I am satisfied that it is appropriate to
 grant the Cross-Motion for Dismissal at this
 time.

 [(Emphasis added).]

Judge McDonnell accordingly entered a conforming order on November

6, 2014 dismissing the complaint.

 Nearly a year later, in September 2015, plaintiff,

represented by new counsel, filed a motion to reinstate the civil

action, to amend the complaint to include additional parties and

legal theories, and to compel defendant to produce more documents

needed for the accounting. With respect to the discovery issues,

plaintiff asserted in his supporting certification that defendant

"left large amounts of disorganized documents, office equipment,

 6 A-1580-15T1
garbage and various items" when he left one of the clinic

locations. Plaintiff asserted that he was unable to find the

missing accounting information when he sorted through those

abandoned documents.

 Defendant countered, through his own certification, that he

had made himself available to the reviewing accountants as

required, that they had never requested further materials or

information from him, and that he had produced every record for

the business in his possession. Defendant argued that there was

no need for the dismissed civil action to be revived or expanded,

and that the additional matters that plaintiff sought to litigate

should be handled in the arbitration.

 Following oral argument, Judge Jean B. McMaster denied

plaintiff's motions. Among other things, Judge McMaster noted

that "plaintiff's claims . . . relate to the same facts and

circumstances of the original matter that was dismissed earlier.

Nothing has changed in that regard." Judge McMaster expressed

agreement with Judge McDonnell's earlier finding about the

broadness of the arbitration provision in the Operating Agreement.

She also noted that the "public policy favors resolution by

arbitration."

 Having been advised of the court's oral decision to not reopen

the case, plaintiff requested Judge McMaster to compel defendant

 7 A-1580-15T1
to provide the additional documents needed to complete the

accounting, invoking the order entered previously by Judge

McDonnell. Judge McMaster denied that request as well, accepting

Dr. Wehbe's representation that he had already supplied all

documents in his possession, and discerning no reason to continue

the court's involvement.

 In his present appeal, plaintiff does not contest Judge

McDonnell's decision in October 2014 to dismiss his original

complaint and to refer those particular pleaded claims to

arbitration. In fact, plaintiff explicitly agrees with Judge

McDonnell's finding that Section 12.8 of the Operating Agreement

contains a "broad" arbitration clause, and that the claims

encompassed in his original complaint are indeed subject to that

arbitration mandate. However, plaintiff contends that his

proposed amended complaint would add parties and causes of action

that are outside of the scope of the Operating Agreement and are

thus non-arbitrable. Among other things, plaintiff contends that

the unwritten "loan agreement" with Dr. Wehbe is not covered by

the Operating Agreement. Plaintiff further asserts that the trial

court at least should have reopened this matter to compel defendant

to provide additional "meaningful" discovery. We disagree.

 As a threshold matter, we note that both the Operating

Agreement and the Reorganization Plan include provisions

 8 A-1580-15T1
designating the laws of Delaware as the governing law.

"Ordinarily, when parties to a contract have agreed to be governed

by the laws of a particular state, New Jersey courts will uphold

the contractual choice if it does not violate New Jersey's public

policy." N. Bergen Rex Transp. v. Trailer Leasing Co., 158 N.J.

561, 568 (1999) (quoting Instructional Sys., Inc. v. Comput.

Curriculum Corp., 130 N.J. 324, 341 (1992)). We discern no such

public policy impediment here, and therefore apply Delaware law

to the parties' dispute.

 Consistent with federal law principles, Delaware law

generally recognizes that courts, not arbitrators, have the

primary authority to decide whether an arbitration agreement is

valid and applicable, a concept known as "substantive

arbitrability." See, e.g., First Options of Chi., Inc. v. Kaplan,

514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985, 993

(1995); James & Jackson, LLC v. Willie Gary, LLC ("Willie Gary"),

906 A.2d 76, 79 (Del. 2006). More specifically, Delaware enforces

the federal rule that "courts should not presume that the parties

agreed to arbitrate arbitrability unless there is 'clear and

unmistakable evidence that they did so.'" Willie Gary, supra, 906

A.2d at 79 (quoting First Options, supra, 514 U.S. at 944, 115 S.

Ct. at 1924, 131 L. Ed. 2d at 994).

 9 A-1580-15T1
 Here, Section 12.8 of the Operating Agreement refers to

mandatory arbitration to be conducted by either the American

Arbitration Association ("AAA") or, alternatively, the JAMS

dispute resolution agency. The Delaware Supreme Court has

"adopt[ed] the majority federal view that [a contract's] reference

to the AAA rules evidences a clear and unmistakable intent to

submit arbitrability issues to an arbitrator." Id. at 80. This

principle "applies in those cases where the arbitration clause

generally provides for arbitration of all disputes and also

incorporates a set of arbitration rules that empower arbitrators

to decide arbitrability." Ibid.; see also GTSI Corp. v. Eyak

Tech., LLC, 10 A.3d 1116, 1120 (Del. Ch. 2010) (applying this

approach). The narrow exception to this rule is that "a court

need not defer to an arbitrator if the assertion that the

underlying dispute would be arbitrable is 'wholly groundless.'"

GTSI Corp., supra, 10 A.3d at 1120-21. Such a determination

requires "a clear showing that the party desiring arbitration has

essentially no non-frivolous argument about substantive

arbitrability to make before the arbitrator." Id. at 1121 (quoting

McLaughlin v. McCann, 942 A.2d 616, 626-27 (Del. Ch. 2008)).

 Here, plaintiff's proposed amended complaint centers around

two central disputes: (1) whether his alleged "loan" was repaid

or partially repaid with equity in Soza Clinic, LLC under the

 10 A-1580-15T1
Reorganization Plan, and (2) whether any of the defendants in the

proposed amended complaint breached fiduciary duties prescribed

in the Operating Agreement. These disputes manifestly fall within

the broad arbitration provisions of the agreements, both of which

extend to "[a]ny dispute, claim or controversy arising out of or

relating to" their respective agreements. (Emphasis added).

Defendant's invocation of these arbitration provisions is not

frivolous or "wholly groundless." The disputes appear to concern

the relationships between the parties with respect to their

business dealings within the overall Soza Clinic enterprise, and

appear to logically "relate to" the Operating Agreement.

 Moreover, both arbitration provisions explicitly apply to

"the determination of the scope of applicability of [the] agreement

to arbitrate." They specifically require that either the AAA

rules or JAMS rules shall apply to any arbitration brought under

them. Given the Delaware Supreme Court's holding in Willie Gary,

supra, 906 A.2d at 80, the arbitration provisions require an

arbitrator, not the court, to decide in the first instance the

issue of arbitrability for all claims in the proposed amended

complaint against all of proposed defendants who executed these

agreements. We yield to have an arbitrator make that

determination.

 11 A-1580-15T1
 Plaintiff further argues the arbitration provisions cannot

be enforced against any of the proposed defendants who did not

sign either the Operating Agreement or the Reorganization Plan.

He asserts that "[t]he proposed additional defendants are not

bound to the parent company's operating agreement or arbitration

clause." That argument is unavailing.

 The Federal Arbitration Act, 9 U.S.C.A. §§ 1-16, requires

courts to enforce an arbitration agreement "notwithstanding the

presence of other persons who are parties to the underlying dispute

but not to the arbitration agreement." Moses H. Cone Mem'l Hosp.

v. Mercury Constr. Corp., 460 U.S. 1, 20, 103 S. Ct. 927, 939, 74

L. Ed. 2d 765, 782 (1983). The United States Supreme Court has

held that "[b]ecause 'traditional' principles' of state law allow

a contract to be enforced by or against nonparties to the contract

through 'assumption, piercing the corporate veil, alter ego,

incorporation by reference, third party beneficiary theories,

waiver and estoppel,'" nonparties to a contract may be bound by,

or be able to enforce, arbitration provisions featured therein.

Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631, 129 S. Ct.

1896, 1902, 173 L. Ed. 2d 832, 840 (2009).

 Indeed, a Delaware court has applied the doctrine of equitable

estoppel to compel signatories to an arbitration agreement to

arbitrate disputes with non-signatories in certain contexts.

 12 A-1580-15T1
Douzinas v. Am. Bureau of Shipping, Inc., 888 A.2d 1146, 1153

(Del. Ch. 2006). "One circumstance that frequently warrants such

estoppel is 'when the signatory to the contract containing an

arbitration clause raises allegations of substantially

interdependent and concerted misconduct by both the non-signatory

and one or more of the signatories to the contract.'" Ibid.

(citation omitted). Refusal to compel arbitration in such a

setting "would render the arbitration between the signatories

meaningless and thwart the state and federal policy in favor of

arbitration." Ibid. This approach is consistent with the strong

public policy in Delaware to "minimize claim splitting," and to

bind parties "for fairness and efficiency's sake to litigate in

one place, and not force the defendants to unnecessarily expend

resources on what would essentially be the same defense in multiple

venues." Ashall Homes Ltd. v. ROK Entm't Group, Inc., 992 A.2d

1239, 1251 (Del. Ch. 2010) (citing McWane Cast Iron Pipe Corp. v.

McDowell-Wellman Eng'g Co., 263 A.2d 281 (Del. 1970)).2

 Such estoppel principles equitably and sensibly apply here.

In each count of the proposed amended complaint, plaintiff alleges

2
 Notably, similar principles enabling non-signatories to be
included at times within contractual arbitrations are followed
under New Jersey law, subject to certain limitations. See, e.g.,
Hirsch v. Amper Fin. Serv., LLC, 215 N.J. 174, 192 (2013); Alfano
v. BDO Seidman, LLP, 393 N.J. Super. 560, 569 (App. Div. 2007).

 13 A-1580-15T1
that both signatories and non-signatories to the agreements are

liable for fundamentally the same wrongful conduct. Given the

apparent interdependency and overlap of his proposed claims, and

the signatories' likely reliance on the arbitration clause,

plaintiff should not be permitted to circumvent the mandatory

arbitration provisions of the Operating Agreement and the

Reorganization Plan by the device of adding non-signatories to his

pleadings. That is especially a fair and just conclusion, after

nearly a year had passed since the time the court dismissed this

complaint.

 Although it is not essential to our analysis, we further note

that the integration clause in the Operating Agreement set forth

in Section 12.3, specifies that it comprises the parties' "entire

agreement . . . with respect to the subject matter," and that it

"supersedes any prior agreement or understanding among the

parties." This provision undercuts plaintiff's contention that

the alleged oral loan agreement that preceded the Operating

Agreement is unaffected by the latter's arbitration mandate.3

3
 In any event, we note that plaintiff's counsel advised this court
in a March 22, 2017 letter that plaintiff and Dr. Wehbe
individually settled the debt claim in bankruptcy proceedings,
leaving only the additional claims set forth in the proposed
amended verified complaint.

 14 A-1580-15T1
 Lastly, we see no reason to overturn Judge McMaster's denial

of plaintiff's post-dismissal motion to compel additional

discovery from defendant. We recognize that Judge McDonnell did

state in October 2014 that the trial court would remain "open in

the event that something emergent arises." Even so, there is a

mechanism within the arbitration process itself for plaintiff to

seek additional discovery under the rules of the AAA or,

alternatively, from JAMS, depending upon which of the two of those

arbitration forums is selected.4 We offer no advisory opinion on

whether such discovery should or should not be granted by an

arbitrator.

 Affirmed.

4
 See Am. Arbitration Ass'n, Commercial Arbitration Rules &
Mediation Procedures (amended & eff. Oct. 1, 2013), available at
https://www.adr.org/sites/default/files/Commercial%20Rules.pdf.
See also JAMS, Comprehensive Arbitration Rules & Procedures (eff.
July 1, 2014), available at https://www.jamsadr.com/rules-
comprehensive-arbitration; JAMS, Recommended Arbitration
Discovery Protocols for Domestic, Commercial Cases (eff. Jan. 6,
2010), available at https://www.jamsadr.com/arbitration-
discovery-protocols.

 15 A-1580-15T1