# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LONE PINE RESOURCES, LP; | ) | |
| SHALE ENERGY HOLDINGS, LLC; | ) | |
| US SHALE ENERGY ADVISORS, LLC; | ) | |
| US SHALE ENERGY GP, LLC; | ) | |
| US SHALE MANAGEMENT COMPANY; | ) | |
| US SHALE ENERGY PARTNERS, LP; | ) | |
| US SHALE ENERGY MIDSTREAM, LLC; | ) | |
| RMCO HOLDINGS, LLC; and | ) | |
| ROCKY MOUNTAIN CRUDE OIL, LLC; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 2020-0450-MTZ |
| | ) | |
| WILLIAM S. DICKEY; | ) | |
| HILLTOPPERS CAPITAL GROWTH, LLC; | ) | |
| GOLDEN TRADING AND | ) | |
| TRANSPORTATION, LLC; | ) | |
| CHRISTOPHER A. HIMES; | ) | |
| TRAILS END ENTERPRISES II, LLC; | ) | |
| RODNEY HILT; and | ) | |
| MOUNTAIN RAYS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: April 8, 2021
Date Decided: June 7, 2021

R. Karl Hill, SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, Delaware; Rochelle R. Koerbel and Maureen E. Sweeny, BLUMLING & GUSKY, LLP, Pittsburgh, PA, *Attorneys for Plaintiffs.*

Samuel T. Hirzel, II and Gillian L. Andrews, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware, *Attorneys for Defendants.*

**ZURN, Vice Chancellor.**

The plaintiffs in this action are related entities that together operate a crude oil purchasing business. They allege that one of their co-founders leveraged his insider positions and the parties' established structure to operate a secret side business, which he fed with the plaintiffs' business opportunities and property. On this motion to dismiss, I conclude that five of the seven defendants allegedly involved in that scheme are not subject to the Court's personal jurisdiction and must be dismissed. I also raise the question of whether the indispensable parties doctrine compels dismissing some or all of plaintiffs' claims in those defendants' absence. I grant the motion to dismiss in part, holding the rest of the parties' arguments in abeyance pending supplemental briefing on the Rule 19 issue. My reasons follow.

## I. BACKGROUND

On Defendants' motion to dismiss (the "Motion"), I draw the following facts from Plaintiffs' second amended complaint (the "Second Amended Complaint") and the documents integral to it.[1]

### A. The Parties And Their Crude Oil Business.

Plaintiffs allege defendant William S. Dickey took advantage of the parties' established crude oil purchasing business to secretly operate a competing side business. Dickey's efforts were allegedly aided by defendants Christopher A. Himes

---

[1] *See* Docket Item ("D.I.") 25 [hereinafter "SAC"]; D.I. 26. The capitalized terms "Plaintiffs" and "Defendants" refer to all named plaintiffs and all named defendants, respectively.

1

and Rodney Hilt (together with Dickey, the "Individual Defendants"). Dickey ran his side business through two Colorado entities that he controls: defendants Golden Trading and Transportation, LLC ("Golden Trading") and Trails End Enterprises II, LLC ("Trails End"). Plaintiffs allege, upon information and belief, that both Golden Trading and Trails End are Dickey's alter egos.

Understanding Plaintiffs' claims and theories requires an overview of the complicated morass of entities that make up their crude oil purchasing business. Plaintiff US Shale Energy Advisors LLC ("Advisors") is at the top of the organization. Advisors has three members: plaintiff Lone Pine Resources, LP ("Lone Pine"), which owns 39.47%; plaintiff Shale Energy Holdings, LLC ("Shale Energy"), which owns 21.06%; and defendant Hilltoppers Capital Growth, LLC ("Hilltoppers"), which owns the remaining 39.47%. Hilltoppers is controlled by Dickey and appears to be his investment vehicle.

Advisors is the sole owner of plaintiff US Shale Energy GP, LLC ("GP"). GP is the general partner of plaintiff US Shale Energy Partners, LP ("Partners"). Partners has several limited partners, including Advisors; Dickey; Himes; and Hilt's investment vehicle, defendant Mountain Rays, LLC ("Mountain Rays"). Partners is the sole owner of plaintiff US Shale Energy Midstream, LLC ("Midstream"), which in turn owns a majority stake in plaintiff RMCO Holdings, LLC ("Holdings"). Nonparty Mercuria Energy America LLC ("Mercuria") holds the minority interest

in Holdings. Holdings owns plaintiff Rocky Mountain Crude Oil, LLC ("RMCO"), one of the operating entities for the parties' business.

GP is also the sole shareholder of plaintiff US Shale Management Company ("Management"). Under a service agreement (the "Service Agreement"),[2] Management provides Holdings, and in turn, RMCO, with operations and administrative services and personnel. Holdings and RMCO, in turn, own the relevant trucks, crude oil truck unloading facilities, trucking terminals, and other related equipment. This opinion refers to Management, Holdings, and RMCO as the "Operating Entities." The parties run their crude oil purchasing business through the Operating Entities.

Most of the relevant entities were incorporated in Delaware several years before the alleged wrongdoing occurred. Advisors, GP, and Partners were incorporated in Delaware in November 2011; Hilltoppers in August 2013; Midstream in August 2015; and Holdings and Management in October 2015.[3] Dickey "directed the formation" of these Delaware entities, executed and filed their

---

[2] SAC, Ex. 1.

[3] *See* D.I. 37 at 2; D.I. 34 at 5 n.1. These dates are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," so I take judicial notice of them. Del. R. Evid. 201(b)(2). Plaintiffs do not object and helpfully confirmed the dates' accuracies. *See* D.I. 37 at 2–3.

3

formation documents, and was otherwise "instrumental" in their formation.[4]  Shale Energy, one of Advisors' investors, is also a Delaware entity, but it does not appear Dickey was involved in forming it.

The remaining parties are not domiciled in Delaware.  Lone Pine and RMCO are Texas entities.  Trails End, Golden Trading, and Mountain Rays are Colorado entities.  The Individual Defendants all live in Colorado.  This opinion refers to Trails End, Golden Trading, Mountain Rays, Himes, and Hilt as the "Colorado Defendants."[5]

---

[4]  SAC ¶¶ 93(a)–(b), 105.

[5] The parties' use of the defined term "Colorado Defendants" has caused some confusion. While Defendants' opening brief did not include Dickey in that defined term, Plaintiffs' answering brief did.  *Compare* D.I. 30 at 1, *with* D.I. 31 at 26 n.1.  In this opinion, the term "Colorado Defendants" does not include Dickey.

The following diagram summarizes the relationships between the various entities, their places of incorporation, and the Individual Defendants' ownership stakes in them.



Before Plaintiffs discovered Defendants' alleged wrongdoing, the Individual Defendants held various positions at the aforementioned entities. Dickey was the most heavily involved. He served on the boards of Advisors, Management, GP, and Holdings. He also served as the Chief Financial Officer and Chief Operating Officer for those entities, controlling their day-to-day activities and operations. Dickey was also an at-will employee at Management, though Plaintiffs do not specify his title. Plaintiffs also do not specify what, if any, role Dickey had at Midstream or RMCO. Through his roles at Management, Dickey was involved in the business's operations and had access to its confidential information, customer lists, employees, and other assets. Dickey held himself out to third parties as being authorized to act on the Plaintiffs' behalf.

Unlike Dickey, Hilt and Himes served in more limited roles. Himes was a Management employee and reported to Dickey, and Hilt sat on Holdings' board of managers. At Management, Himes was responsible for negotiating and executing crude oil purchase and sales agreements. Himes had access to Management's confidential information by virtue of being an employee.

### B. Dickey Begins His "Secret Side Business."

Beginning in approximately February 2019, Dickey leveraged the parties' existing business and his access to their resources for his own benefit, in what

6

Plaintiffs call Dickey's "secret side business."[6] According to Plaintiffs, "Dickey improperly utilized his access to confidential business information, intellectual property, and access to employees to secretly raid the Plaintiffs' finances and divert their funds and customers for his personal benefit and the benefit of his company's customers."[7] Dickey was "secretly diverting and directing employees of [Management] to provide similar services to his own companies, Defendants Golden Trading and [Trails End]," without repaying Management.[8] Specifically, Dickey improperly used Management's field personnel, field supervisors, intellectual property, and software programs.

As part of his scheme, Dickey used Management employees to buy crude oil production for Golden Trading behind Plaintiffs' back. Golden Trading would sell that production to RMCO at a $4.50 per barrel margin. Dickey would sign the sales contract for both Golden Trading (as the "seller") and RMCO (as the "buyer"). RMCO would then sell the production to Mercuria to satisfy an ongoing first purchase agreement. Once Mercuria paid RMCO, Dickey directed Management employees to pay Golden Trading its margin, pay the producers, and make other

---

[6] *See* SAC ¶¶ 135–40. The Second Amended Complaint does not mention any acts occurring before February 2019, other than execution of the entities' operating agreements.

[7] *Id.* ¶ 168.

[8] *Id.* ¶ 112. Himes allegedly took similar actions.

required distributions using RMCO funds. These transactions continued from February through at least April of 2019.

Dickey and Himes also used the Operating Entities' resources to build Golden Trading's business under the guise of seeking business for RMCO. They used Management's facilities, equipment, and employees (including Himes' son and nephew), and RMCO's customer lists and intellectual property, to conduct lease assessments and solicit and assess potential business opportunities for Golden Trading. Dickey and Himes advised employees that RMCO would be the purchaser on these projects, but in fact, Golden Trading ended up with the contracts. Dickey and Himes actively concealed their efforts from Plaintiffs.

Dickey also misused his positions by comingling funds that belonged to the Operating Entities and Dickey's other entities. Dickey repeatedly deposited checks into RMCO's account and used the money to fund unauthorized wire transfers on behalf of his other entities. On other occasions, Dickey allegedly took funds belonging to RMCO and redirected them to Golden Trading, which reimbursed RMCO belatedly and incompletely. Dickey and Himes also executed a lease for office space in Colorado to house Golden Trading's operations; that lease was in RMCO's name and paid for using RMCO's funds, but not authorized by RMCO or Holdings.

8

After learning of Dickey's misconduct, Plaintiffs removed him from his various positions on June 24, 2019. Plaintiffs also fired Himes from his job at Management and removed Hilt from the Holdings board.

### C. This Litigation Ensues.

On June 9, 2020, Plaintiffs filed their initial complaint in this action.[9] Their first amended complaint followed on July 10.[10] Defendants moved to dismiss that complaint on September 10.[11] Plaintiffs responded by filing the Second Amended Complaint on October 27, which is the operative pleading on the Motion.[12]

The Second Amended Complaint asserts fourteen counts, pled by all Plaintiffs against all Defendants unless otherwise noted. Counts I through VIII focus on Dickey's secret side business. In Count I, Management alleges Dickey breached his contractual and fiduciary duties to it. In Count II, Advisors, GP, Partners, Midstream, Holdings, and RMCO similarly allege Dickey breached contractual and fiduciary duties owed to them. Count III alleges Defendants violated the applicable Delaware, Colorado, and Texas uniform trade secrets acts. Counts IV and V are tort claims for "misappropriation of property and services" and conversion, respectively. Count VI, pled in the alternative, alleges all Defendants were unjustly enriched. In

---

[9] D.I. 1.

[10] D.I. 6.

[11] D.I. 22.

[12] *See generally* SAC.

Count VII, Holdings and RMCO allege Defendants tortiously interfered with contractual and prospective contractual relations. Count VIII alleges Defendants engaged in a civil conspiracy.

Counts IX through XIV all seek declaratory judgments against Dickey regarding his right to indemnification.[13] All six counts contend that because of Dickey's wrongdoing, he has forfeited the right to indemnification under the relevant contractual provisions. Advisors brings Count IX; GP brings Count X; Management brings Count XI; Midstream brings Count XII; Holdings brings Count XIII; and RMCO brings Count XIV.

On November 12, Defendants filed the pending Motion, seeking to dismiss portions of the Second Amended Complaint.[14] The parties briefed the Motion, and the Court heard oral argument on April 8, 2021.[15]

## II. ANALYSIS

Defendants' Motion presents several grounds for dismissal, including lack of personal jurisdiction, improper venue, and failure to state a claim. I address

---

[13] *See id.* ¶¶ 265–358. Count IX is also against Hilltoppers, the vehicle through which Dickey invested in Advisors.

[14] *See* D.I. 26.

[15] *See* D.I. 36; *see also* D.I. 39 [hereinafter "Hr'g Tr."].

Defendants' personal jurisdiction arguments first, as I can only substantively review the pleadings against them if I have jurisdiction to do so.[16]

### A. Personal Jurisdiction

"Personal jurisdiction refers to the court's power over the parties in the dispute."[17]  "When personal jurisdiction is challenged by a motion to dismiss pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the nonresident defendant."[18]  "If, as here, no evidentiary hearing has been held, plaintiffs need only make a *prima facie* showing of personal jurisdiction and the record is construed in the light most favorable to the plaintiff."[19]  "A *prima facie* case requires the production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor."[20]  To test personal jurisdiction, "[t]he court engages in a two-step analysis:  the court must first determine that service of process is authorized

---

[16] *See Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 269 (Del. 1993) ("A court without personal jurisdiction has no power to dismiss a complaint for failure to state a claim.").

[17] *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 129 (Del. 2016) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)).

[18] *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 326 (Del. Ch. 2003).

[19] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (footnotes and internal quotation marks omitted) (citing *Benerofe v. Cha*, 1996 WL 535405, at *3 (Del. Ch. Sept. 12, 1996), and quoting *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)).

[20] *Baier v. Upper N.Y. Inv. Co. LLC*, 2018 WL 1791996, at *5 (Del. Ch. Apr. 16, 2018) (internal quotation marks omitted) (quoting *Prima Facie Case*, *Black's Law Dictionary* (10th ed. 2014)).

by statute and then must determine that the exercise of jurisdiction over the nonresident defendant comports with traditional due process notions of fair play and substantial justice."[21]

Plaintiffs do not contend the Court has general jurisdiction over Dickey or the Colorado Defendants. Nor does the Motion seek to dismiss Dickey altogether. Rather, the parties' dispute centers on the source and scope of statutory specific jurisdiction. Plaintiffs assert, among other things, that Dickey's formation of most of the Delaware entities in the parties' enterprise supports long-arm jurisdiction over him under 10 *Del. C.* § 3104(c)(1), and personal jurisdiction over the Colorado Defendants under a conspiracy theory.[22] Dickey and the Colorado Defendants dispute these theories, asserting Dickey did not form the entities in furtherance of the alleged wrongdoing.

---

[21] *Ryan*, 935 A.2d at 265 (citing *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972, at *3 (Del. Ch. Mar. 3, 2005)).

[22] *See generally* D.I. 31 at 23–39. Plaintiffs initially sought a summons for service on Dickey under Section 3104. *See* D.I. 2 at 1; *see also* D.I. 7 at 1. The issued summons invoked both Section 3104 and 6 *Del. C.* § 18-109, the LLC consent statute. *See* D.I. 3 at 5–8. In the Second Amended Complaint, Plaintiffs state that the Court has personal jurisdiction over Dickey "due to his status as a member, officer, and/or director of Delaware entities [Advisors], [GP], [Management], [Partners], and [Holdings], as well as Defendant Hilltoppers, during the at-issue time period," apparently invoking the consent statute. SAC ¶ 74. Plaintiffs' brief does not address the consent statute, but argues for long-arm jurisdiction primarily based on Dickey's formation of Delaware entities. *See* D.I. 31 at 23–24. Plaintiffs also argue that "Dickey, Hilt and Himes all contractually consented to jurisdiction and venue in Delaware, as owners of interest in [Partners]." *Id.* at 7 (citing SAC ¶¶ 39, 64–66); *see also id.* at 17–18 (citing SAC ¶¶ 39, 64–66). These and other arguments Plaintiffs present are addressed below.

Nevertheless, Defendants concede that this Court has limited personal jurisdiction over Dickey due to his fiduciary roles at some of the Delaware entities under the relevant consent statutes.[23] Dickey disputes whether the consent statute reaches his role at Midstream.[24]

### 1. The Long-Arm Statute Does Not Support Personal Jurisdiction Over Dickey.

Delaware's long-arm statute provides the following potential grounds for specific personal jurisdiction:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> . . .
>
> (5) Has an interest in, uses or possesses real property in the State; or

---

[23] *See* D.I. 30 at 19.

[24] *See id.* at 23–27.

  (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.[25]

"Section 3104 requires claims to 'arise from,' not merely be 'related to,' conduct in Delaware."[26]

  Plaintiffs assert Dickey is subject to personal jurisdiction under Section 3104(c)(1) because of his role in forming the various Delaware entities in this case.[27] "Not surprisingly, Delaware courts have held consistently that forming a Delaware entity constitutes the transaction of business within Delaware that is sufficient to establish specific personal jurisdiction under Section 3104(c)(1)."[28] "But mere formation of a Delaware entity, without more, is insufficient for this Court to exercise jurisdiction."[29] Because Section 3104(c)(1) confers specific, not general, jurisdiction, formation of a Delaware entity may only serve as the basis for personal

---

[25] 10 *Del. C.* § 3104(c). Section 3104(c)(4), which the parties do not argue is applicable here, confers general jurisdiction and requires a higher level of activity in the forum state. *See Comput. People, Inc. v. Best Int'l Gp., Inc.*, 1999 WL 288119, at \*7 (Del. Ch. Apr. 27, 1999) ("The exercise of 'general' jurisdiction under § 3104(c)(4) requires a higher level of activity within the forum state than does the exercise of 'specific' jurisdiction under (c)(3).").

[26] *Microsoft Corp. v. Amphus, Inc.*, 2013 WL 5899003, at \*11 (Del. Ch. Oct. 31, 2013).

[27] *See* D.I. 31 at 23–24.

[28] *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D/ June 21, 2002*, 2017 WL 3575712, at \*5 (Del. Ch. Aug. 18, 2017) (compiling sources), *aff'd*, 184 A.3d 1290 (Del. 2018) (ORDER).

[29] *Baier*, 2018 WL 1791996, at \*9 (citing *Conn. Gen. Life Ins. Co. v. Pinkas*, 2011 WL 5222796, at \*2 (Del. Ch. Oct. 28, 2011)).

jurisdiction where there is a sufficient nexus between that formation and the alleged wrongful conduct.[30] "When determining whether a sufficient nexus exists, the principal factor that Delaware courts have examined is the extent of the factual relationship between the formation of the Delaware entity and the cause of action."[31] In other words, the formation of the entity itself must be "done as part of a wrongful scheme"[32] or "an integral component of [the] total transaction . . . to which the plaintiff's instant cause of action relates."[33]

The Second Amended Complaint does not tether the formation of any Delaware entity to Dickey's secret side business. Plaintiffs primarily rely on the allegation that forming these entities was an "integral component" of Dickey's

---

[30] *Terramar Retail Ctrs.*, 2017 WL 3575712, at *5–6; *see Dow Chem. Co. v. Organik Kimya Hldg. A.S.*, 2017 WL 4711931, at *8 (Del. Ch. Oct. 19, 2017) ("Section 3104 is . . . a single act statute that establishes jurisdiction over nonresidents on the basis of a single act or transaction engaged in by the nonresident within the state. Thus, Section 3104(c)(1) will only support an exercise of personal jurisdiction with respect to those causes of action that have a nexus to the transaction of business that took place in the State." (internal quotation marks omitted) (quoting *Carlton Invs. v. TLC Beatrice Int'l Hldgs., Inc.*, 1995 WL 694397, at *10 (Del. Ch. Nov. 21, 1995), and then quoting *Chandler v. Ciccoricco*, 2003 WL 21040185, at *11 (Del. Ch. May 5, 2003))).

[31] *Terramar Retail Ctrs.*, 2017 WL 3575712, at *6.

[32] *Conn. Gen.*, 2011 WL 5222796, at *2 (citing *Cairns v. Gelmon*, 1998 WL 276226, at *3 (Del. Ch. May 21, 1998)).

[33] *Papendick v. Bosch*, 410 A.2d 148, 152 (Del. 1979); *see Dow Chem.*, 2017 WL 4711931, at *8 ("Put differently, the formation of a Delaware entity must be central to the plaintiff's claims of wrongdoing." (alterations and internal quotation marks omitted) (quoting *Cairns*, 1998 WL 276226, at *3)); *see also id.* n.112 (collecting sources).

15

plan.[34]  This Court has rejected similar allegations when they have been unsupported by the complaint.[35]  Further, it appears the Delaware entities existed for years before Dickey decided to raid them in his scheme.  Dickey's alleged looting of the Delaware entities began in 2019—between four and seven years after those entities were formed.[36]  And Plaintiffs have not identified a meaningful nexus, supported by the Second Amended Complaint's allegations, between formation in Delaware and the challenged misconduct.  Thus, Plaintiffs' allegation that formation was an "integral part" of Dickey's scheme is conclusory and cannot support specific personal jurisdiction.

---

[34] *See* SAC ¶ 107 ("The formation and incorporation of the Plaintiff entities represents served as [sic] an integral component leading to and assisting Dickey with his conduct that gave rise to the causes of actions set forth herein.").

[35] *See Baier*, 2018 WL 1791996, at *8–9.  In *Baier*, the plaintiff similarly pled that defendant "formed his Delaware LLCs in Delaware in furtherance of a fraudulent scheme and the formation of [the] Delaware LLCs is an integral part of the actions giving rise to [plaintiff's] claims." *Id.* at *8 (quoting plaintiff's complaint).  The *Baier* Court looked past this conclusory allegation and determined that the facts pled in the complaint undermined such a conclusion.  Because the relevant entities were formed after the fraudulent scheme concluded, the Court held that, despite plaintiff's allegations to the contrary, formation of the Delaware entities "could not have been integral to the alleged wrongs that animate [plaintiff's] claims," and so the plaintiff "cannot make a *prima facie* case for the Court's exercise of jurisdiction over [defendant] under Section 3104(c)(1)." *Id.* at *9.

[36] *Compare* SAC ¶ 125, *with* D.I. 37 at 2, *and* D.I. 34 at 5 n.1.  This substantial gap weakens Plaintiffs' theory.  *Cf. Dow Chem*, 2017 WL 4711931, at *10 (noting that a two-year gap between the entities' formation and the alleged wrongdoing "weakens the purported causal connection between incorporation" and the wrongdoing, but sustaining plaintiffs' theory of personal jurisdiction where other record evidence supported the theory).  More crucially, there is nothing in the Second Amended Complaint to support a conclusion that forming the Delaware entities was an integral component of Dickey's fraudulent scheme.

Beyond this conclusory allegation, Plaintiffs also rely on general allegations about Dickey's use of the Operating Entities' resources to further his scheme.[37] Plaintiffs argue the Delaware entities' existence "materially facilitated Dickey's illegal efforts" against the Plaintiffs, thus subjecting him to personal jurisdiction.[38] The Delaware entities' mere existence in Dickey's scheme cannot support personal jurisdiction; he must have formed them as an integral component of that scheme. To hold otherwise would obviate the specific formation nexus requirement for all actions involving Delaware entities. Plaintiffs do not make a *prima facie* case that Dickey formed the Delaware entities "as part of"[39] or as "an integral component"[40] of his fraudulent scheme.

---

[37] *See* D.I. 31 at 24 (citing SAC ¶¶ 107, 108, 112, 115–25, 131–49, 163–65). Paragraph 112 simply states that Dickey secretly redirected Management's assets. Paragraphs 115 through 125 describe specific instances of Dickey's alleged misappropriation of Management's and RMCO's assets. Paragraphs 131 to 149 describe Defendants' misuse of Plaintiffs' confidential business information, customers, employees, and other private information and intellectual property. Paragraphs 163 to 165 discuss Dickey and Himes leasing an office space for Golden Trading in RMCO's name and with RMCO's funds. None of these allegations relate to the entities' formation.

[38] *See* SAC ¶ 108 ("The existence of each entity, and Dickey's material participation in and control over the day to day activities of the existing entities, materially facilitated Dickey's illegal efforts against the partners and entities of the named Plaintiffs.").

[39] *Conn. Gen.*, 2011 WL 5222796, at *2 (citing *Cairns*, 1998 WL 276226, at *3).

[40] *Papendick*, 410 A.2d at 152.

### 2. The LLC Consent Statute Does Not Support Personal Jurisdiction For Claims By Midstream Or RMCO.

Dickey concedes he consented to limited personal jurisdiction by virtue of his status as a fiduciary for several of the enterprise's Delaware corporations, limited partnerships, and limited liability companies.[41] Defendants dispute the application of the Delaware LLC Act's implied consent statute, 6 *Del. C.* § 18-109, to claims by Midstream.

> Section 18-109(a) permits service of process on an LLC's manager
>
> in all civil actions or proceedings brought in the State of Delaware involving or relating to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company or any member of the limited liability company, whether or not the manager . . . is a manager . . . at the time suit is commenced.[42]

---

[41] *See* D.I. 30 at 19–27. Defendants do not address the application of the applicable consent statutes to claims by Holdings, Advisors, Partners, GP, and Management against Dickey, apparently conceding their application. Defendants have not argued that exercising personal jurisdiction over Dickey under the consent statute would offend the traditional due process "notions of fair play and substantial justice." *See Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The demonstrative Defendants' counsel used at oral argument, which is not on the docket, further confirms that Defendants do not contest personal jurisdiction over Dickey except regarding Midstream and the Holdings forum selection clause. *See* Hr'g Tr. 5:15–22; *see also id.* 4:7–17. Based on that concession, I conclude this Court has personal jurisdiction over Dickey with respect to the claims by Management in Count I, and the claims by Advisors, GP, Partners, and Holdings in Count II. I also take Defendants' concession to mean those entities' trade secrets claims (Count III), tort claims (Counts IV, V, VI, VII, and VIII) and declaratory judgment claims (Counts IX, X, XI, and XIII) are sufficiently related to the breach of fiduciary duty claims, subjecting Dickey to personal jurisdiction in this Court for such claims.

[42] 6 *Del. C.* § 18-109(a).

18

This statutory hook for personal jurisdiction presents an inquiry for the defendant, and an inquiry for the claim.

First, the defendant must be a manager. There are two types of "managers" that may be served under the consent statute.

> Section 18-109(a) defines the term "manager" as encompassing two categories of persons: first, a person formally named as a manager pursuant to the governing LLC agreement; and second, a person not formally named as a manager pursuant to the governing LLC agreement but who nevertheless "participates materially in the management of the limited liability company."[43]

"The plain meaning of the word 'participate' involves taking part in or playing a role in an activity or event. When modifying the word 'participate,' the word 'materially' introduces a level of significance. It requires meaningful participation, rather than minor participation."[44] For example, an individual "participate[d] materially" in the LLC's business where he "acted as president of the Compan[y], ran [its] day-to-day operations, and took binding action on [its] behalf."[45]

---

[43] *Metro Storage Int'l LLC v. Harron*, 2019 WL 3282613, at *1 (Del. Ch. July 19, 2019) (quoting 6 *Del. C.* § 18-109(a)).

[44] *Id.* at *8 (footnotes omitted) (compiling dictionaries). The *Metro Storage* Court took a plain-language approach to Section 18-109 in light of the Delaware Supreme Court's decision in *Hazout v. Tsang Mun Ting*, 134 A.3d 274 (Del. 2016). *See Metro Storage*, 2019 WL 3282613, at *7–8, *11, *15. This decision takes the same approach.

[45] *Metro Storage*, 2019 WL 3282613, at *9 (citing *Phillips v. Hove*, 2011 WL 4404034, at *22 (Del. Ch. Sept. 22, 2011)).

Second, the claim against the manager must "involve or relate to" the business

of the LLC.

> Like other entity statutes that authorize service of process on members
> of the governing body of an entity or its officers, Section 18-109(a) only
> provides a basis for specific jurisdiction, not general jurisdiction. The
> claim against the manager must therefore involve or relate to the
> business of the limited liability company or a violation by the manager
> of a duty to the limited liability company or any member of the limited
> liability company.[46]

Delaware courts use a three-factor test:

> An action involves or relates to the business of an LLC within the
> meaning of § 18–109(a) if: (1) the allegations against the manager
> focus centrally on his rights, duties and obligations as a manager of a
> Delaware LLC; (2) the resolution of the matter is inextricably bound up
> in Delaware law; and (3) Delaware has a strong interest in providing a
> forum for disputes relating to the ability of managers of an LLC formed
> under its law to properly discharge their respective managerial
> functions.[47]

"The Court of Chancery has held that once jurisdiction is properly obtained over a

non-resident director defendant pursuant to [a consent statute], such non-resident

---

[46] *Id.* at *5 (alterations, citations, and internal quotation marks omitted) (citing *Total Hldgs. USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 885 n.39 (Del. Ch. 2009), and then quoting 6 *Del. C.* § 18-109(a)); *see also id.* at *20 ("Because Section 18-109(a) supports specific jurisdiction and not general jurisdiction, the plaintiff could serve those members who had participated materially in the events giving rise to the claim, but not every member of the LLC.").

[47] *Hartsel v. Vanguard Gp., Inc.*, 2011 WL 2421003, at *8 (Del. Ch. June 15, 2011) (alterations removed) (quoting *Vichi v. Koninklijke Philips Elecs.*, 2009 WL 4345724, at *7 (Del. Ch. Dec. 1, 2009)), *aff'd*, 38 A.3d 1254 (Del. 2012) (ORDER).

director is properly before the Court for any claims that are *sufficiently related to the cause of action* asserted against such directors in their capacity as directors."[48]

Defendants argue that the consent statute does not reach Midstream's claims because Dickey is not a Midstream manager under Section 18-109. I agree. To the extent Plaintiffs can be understood to allege that Midstream formally designated Dickey as a manager,[49] that allegation is belied by the plain language of Midstream's operating agreement. Section 6.1 of that agreement states that its "business and affairs . . . will be exclusively and completely managed by, and the powers of the Company shall be exercised by or under the authority of, a manager (the "**Manager**"). The initial Manager will be [Partners]."[50] It is clear from this language that Dickey was not Midstream's formal manager.

---

[48] *Infinity Inv'rs Ltd. v. Takefman*, 2000 WL 130622, at *6 (Del. Ch. Jan. 28, 2000) (interpreting Delaware's non-resident director implied consent statute, 10 *Del. C.* § 3114, in the context of a Section 225 proceeding); *see Metro Storage*, 2019 WL 3282613, at *27 ("Once a defendant is subject to personal jurisdiction under 6 *Del. C.* § 18-109(a) as to certain claims, the Court may exercise personal jurisdiction over the defendant with respect to any claims that are sufficiently related to the cause of action. Sufficiently related claims are those predicated on the same set of facts." (internal quotation marks omitted) (quoting *Yu v. GSM Nation, LLC*, 2018 WL 2272708, at *11 (Del. Super. Apr. 24, 2018))).

[49] Though Plaintiffs repeatedly allege that Dickey breached his duties "as an officer, director, and manager for Midstream," SAC ¶¶ 199, 205, they do not explain Dickey's exact role at Midstream. *See id.* ¶ 320 ("At all times relevant hereto, Defendant Dickey misused his position as a high level employee, officer, director, and/or manager, in order to seize upon confidential, private, and valuable information of Midstream for his benefit and the benefit of the other Defendants.").

[50] *See* SAC, Ex. 8 § 6.1.

Nor is Dickey Midstream's acting manager, as he is not alleged to have participated materially in Midstream's management.[51] The Second Amended Complaint does not clearly allege that Dickey had any formal role at Midstream.[52] More fundamentally, it does not allege that he materially participated in Midstream's management. The allegations that "Dickey controlled the day to day activities and operations of *most of* the Plaintiff companies in his capacity as Chief Financial Officer and Chief Operations Officer"[53] conspicuously do not include Midstream.[54] The Second Amended Complaint does include broad allegations about Dickey's

---

[51] *See Metro Storage*, 2019 WL 3282613, at *1 (referring to an individual who participates materially in an LLC's management as an "acting manager").

[52] Plaintiffs allege this Court has personal jurisdiction over Dickey by virtue of his roles at other Delaware entities, but not Midstream. SAC ¶ 74 ("This Court has jurisdiction over Defendant Dickey due to his status as a member, officer, and/or director of Delaware entities [Advisors], [GP], [Management], [Partners], and [Holdings], as well as Defendant Hilltoppers, during the at-issue time period."). Plaintiffs allege Dickey was removed from roles at other Delaware entities, but not Midstream. *Id.* ¶¶ 47–48 ("After the discovery of certain matters and actions by Dickey outlined in more detail below, Dickey was terminated from his employment with [Management], and removed as an officer of [Management], [GP], [Advisors], RMCO and [Holdings], on June 24, 2019. Dickey was also removed from the Board of Directors for [Management], and from the Board of Managers for [Holdings] on June 24, 2019.").

But several allegations imply that Dickey has a fiduciary role by arguing that he breached his fiduciary duties. *See id.* ¶¶ 199, 205; *see also id.* ¶¶ 317, 322 (alleging that Dickey "violated his duties" to Midstream). Plaintiffs are not clear as to what that role might be: "At all times relevant hereto, Defendant Dickey misused his position as a high level employee, officer, director, and/or manager, in order to seize upon confidential, private, and valuable information of Midstream for his benefit and the benefit of the other Defendants." *Id.* ¶ 320. Similar "and/or" allegations appear regarding Advisors, GP, Management, Holdings, and RMCO. *See id.* ¶¶ 275, 289, 305, 337, 356.

[53] *Id.* ¶ 84 (emphasis added).

[54] *See id.* ¶ 84(a)–(d).

work at the "Plaintiffs"[55] or the "US Shale Plaintiffs,"[56] defined to include Midstream.[57] But these allegations are conclusory[58] or vague group pleading.[59] The more specific allegations that Dickey performed clerical tasks for the "Plaintiffs"[60] or helped facilitate Plaintiffs' formation[61] do not amount to material participation in Midstream's management.[62] Moreover, none of Dickey's alleged wrongful acts "involv[e] or relat[e] to" Midstream's business or Dickey's role there;[63] rather, Midstream's damages stem from Dickey's alleged misconduct at the Operating Entities.[64] This Court does not have statutory jurisdiction over Dickey for claims pertaining to Midstream.

---

[55] *See id.* ¶ 93.

[56] *See id.* ¶¶ 86–88.

[57] *See id.* at 2.

[58] *See id.* ¶ 86.

[59] *See id.* ¶¶ 87–89.

[60] *See id.* ¶ 93(c)–(h) (alleging, among other things, that Dickey "sent and received emails," "sent and received Faxes," "filed Tax Returns," and "executed documents").

[61] *See id.* ¶ 93(a)–(b).

[62] *See Metro Storage*, 2019 WL 3282613, at *8 (defining material participation).

[63] *See 6 Del. C.* § 18-109(a).

[64] As I understand it, Plaintiffs' theory of recovery is that downstream breaches of fiduciary duty within or torts directed to the Operating Entities caused the upstream entities to suffer damages. *See* SAC ¶¶ 216 ("The aforementioned breaches by Defendant Dickey have caused [Holdings] to suffer damages."), 217 ("The aforementioned breaches by Defendant Dickey have caused RMCO, a wholly owned subsidiary of [Holdings], to suffer damages."), 218 ("The aforementioned breaches by Defendant Dickey have caused Midstream, as the majority owner of [Holdings], to suffer damages."), 219 ("The aforementioned breaches by Dickey have caused [Partners], as 100% owner of Midstream, to suffer damages."), 220 ("The aforementioned breaches by Dickey have caused [GP], as

Nor have Plaintiffs established that Dickey statutorily consented to personal jurisdiction based on any role he might have at RMCO.[65] RMCO is a Texas entity.[66] Thus, the Delaware consent statute facially does not apply to RMCO's claim. While the Court has personal jurisdiction over Dickey for claims relating to his role at RMCO's parent company, Holdings, RMCO's claims stem from duties Dickey allegedly owed or harm he caused to RMCO itself.[67] Such claims do not "involve[] or relate[] to" Holdings' business and plainly do not "focus centrally on [Dickey's] rights, duties and obligations as a manager of a *Delaware* LLC."[68]

---

the general partner of [Partners], to suffer damages."), 221 ("The aforementioned breaches by Dickey have caused [Advisors], the 100% owner of [GP] and a limited partner of [Partners], to suffer damages.").

[65] Plaintiffs have not carried their burden to establish any statutory basis for personal jurisdiction for claims relating to RMCO. For their part, Defendants did not address that statutory basis, seeking instead to dismiss claims by RMCO under a forum selection clause in Holdings' operating agreement. *See* D.I. 30 at 19–21. At oral argument, counsel clarified that the Holdings forum selection clause presents a venue issue, not a jurisdictional one. Hr'g 17:9–18:24. I address the venue argument below. The fact remains that Plaintiffs have not met their burden of establishing a statutory basis for personal jurisdiction for RMCO's claim.

[66] *See* SAC ¶ 13.

[67] Count II alleges, among other things, that Dickey breached contractual and fiduciary duties he owed to RMCO. *E.g.*, *id.* ¶¶ 197 ("Defendant Dickey's actions, as described herein, constituted a breach of his duty of loyalty as an officer, director, and manager for RMCO."), 203 ("Defendant Dickey's actions, as described herein, constituted a breach of his fiduciary duties as an officer, director, and manager for RMCO."), 209 ("Defendant Dickey's actions, as described herein, constituted a bad faith violation of the implied contractual covenant of good faith and fair dealing owed to RMCO.").

[68] *See Hartsel*, 2011 WL 2421003, at *8 (emphasis added).

24

In sum, Dickey has consented to personal jurisdiction in this Court for claims relating to his fiduciary roles at Advisors, GP, Partners, Management, and Holdings. He has not consented to personal jurisdiction for claims relating to his roles, if any, at Midstream and RMCO. On that basis, the claims by Midstream and RMCO in Counts II through VI and VIII, RMCO's claims in Counts VII and XIV, and Midstream's claim in Count XII are dismissed.

### 3. This Court Lacks Personal Jurisdiction Over The Colorado Defendants.

Despite presenting a litany of theories, Plaintiffs have not established a *prima facie* case to exercise personal jurisdiction over the Colorado Defendants. Plaintiffs' primary argument is that the Colorado Defendants are subject to the Court's personal jurisdiction under the conspiracy theory of jurisdiction. The Delaware Supreme Court's decision in *Istituto Bancario Italiano, SpA v. Hunter Engineering Co., Inc.*[69] established a five-part test to determine jurisdiction under a conspiracy theory. That test requires a plaintiff to show:

> (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[70]

---

[69] 449 A.2d 210 (Del. 1982).

[70] *Id.* at 225.

"While a valid path to jurisdiction, the conspiracy theory of personal jurisdiction is very narrowly construed to prevent plaintiffs from circumventing the minimum contacts requirement. Therefore, application of personal jurisdiction under the conspiracy theory requires factual proof of each enumerated element."[71] A plaintiff who satisfies *Istituto Bancario*'s five elements satisfies the two-step personal jurisdictional test.[72]

Defendants argue Plaintiffs' theory fails because they cannot satisfy the third element of the test: "a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state." To satisfy this element, Plaintiffs rely primarily on Defendants' formation of Delaware entities. Plaintiffs point to a valid doctrine: it is "well-established that a party that forms a Delaware entity as part of a wrongful scheme has constitutionally sufficient minimum contacts with Delaware for purposes of personal jurisdiction."[73] But as explained, the Delaware entities here were not formed as part of a wrongful scheme. The mere fact that Dickey formed

---

[71] *Stimwave Techs. Inc. v. Perryman*, 2020 WL 6735700, at *5 (Del. Ch. Nov. 17, 2020) (alterations, footnotes, and internal quotation marks omitted) (quoting *Morrison v. Berry*, 2020 WL 2843514, at *13 (Del. Ch. June 1, 2020), and then quoting *Werner*, 831 A.2d at 330).

[72] *See Matrixx Gp., Inc. v. River Assocs. Invests., LLC*, 2017 WL 4355635, at *1 (Del. Ch. Sept. 29, 2017) (citing *Virtus Cap. L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *12–13 (Del. Ch. Feb. 11, 2015)).

[73] *Microsoft Corp.*, 2013 WL 5899003, at *9 (internal quotation marks omitted) (citing *Papendick*, 410 A.2d at 152).

Delaware entities is insufficient to confer this Court with personal jurisdiction over the Colorado Defendants where that formation was not in furtherance of their conspiracy.

Plaintiffs' other allegations about the Colorado Defendants' Delaware contacts, including that they "do[] business in the state of Delaware, contract[] with Delaware entities, caused intentional and/or tortious injury to Delaware entities in Delaware,"[74] are plainly conclusory. Moreover, Defendants make no effort to explain how these vague conclusions show the Colorado Defendants took action in Delaware "in furtherance of the conspiracy."[75]

Dickey's consent to personal jurisdiction in this Court does not change this conclusion. The circumstances here are similar to those presented in *Stimwave Technologies Inc. v. Perryman*.[76] There, a fiduciary of the plaintiff company was accused of "raiding" the company's headquarters, aided by two nonfiduciary accomplices.[77] Neither the raid nor the accomplices' efforts to aid it occurred in

---

[74] *See* SAC ¶¶ 75–79.

[75] *See Istituto Bancario*, 449 A.2d at 225. Plaintiffs also point to specific allegations of Defendants' wrongdoing, arguing in their brief that these acts "either took place in or had an effect on Delaware." D.I. 31 at 38 (citing SAC ¶¶ 113, 117, 118, 131). This argument finds no support in the Second Amended Complaint, which does not allege where these specific actions took place or where their effect was felt.

[76] 2020 WL 6735700.

[77] *See id.* at *4–5.

Delaware.[78]  Although the Court had personal jurisdiction over the fiduciary under a consent theory, it rejected the plaintiff's plea to extend jurisdiction to the accomplices:

> Here, no contacts are alleged to exist between [the accomplices] and Delaware.  Their only connection to Delaware is that the Company happens to be incorporated in this state.  Put another way, the Plaintiff's argument for conspiracy jurisdiction would have this Court exercise jurisdiction solely because [the fiduciary] was still a fiduciary of the Company at the time of the "raid"—had she not been, even under the Plaintiff's theory, personal jurisdiction would fail.  It cannot be that this Court's jurisdiction over a person hinges on the *status* of a *conspirator* of that person, rather than on the *actions* of the defendant *himself*.  That conclusion would violate the constitutional requirement of *International Shoe Co. v. State of Washington*, which held that a forum state cannot exercise personal jurisdiction without sufficient minimum contacts between the defendant and the forum state, such that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice."[79]

The Colorado Defendants, who similarly lack connections to Delaware, are not subject to this Court's jurisdiction merely because Dickey, a member of their alleged conspiracy, consented to personal jurisdiction as a fiduciary of certain Delaware entities.  To hold otherwise, as the *Stimwave* Court suggested, would do violence to the constitutional minimum contacts requirement.  To the extent Plaintiffs frame this theory as "aiding and abetting," it fails for the same reasons.[80]

---

[78] *See id.* at *5.

[79] *Id.* (footnotes omitted) (quoting *Hart Hldg. Co. Inc. v. Drexel Burnham Lambert Inc.*, 1992 WL 127567, at *2 (Del. Ch. May 28, 1992)).

[80] *See id.* ("The Plaintiff's theory appears to be that [the fiduciary] is subject to Delaware jurisdiction for breaches of fiduciary duty, so aiders and abettors of those breaches are also

Plaintiffs also argue that the Court has personal jurisdiction over Trails End and Golden Trading because they are Dickey's alter egos. The alter ego theory of personal jurisdiction has two elements: "First, a plaintiff must plead that the out-of-state defendant over whom jurisdiction is sought has no real separate identity from a defendant over whom jurisdiction is clear. Second, the plaintiff must identify the existence of acts in Delaware which can be fairly imputed to the out-of-state defendant."[81] Even assuming Plaintiffs' conclusory allegations could satisfy the first element, they cannot satisfy the second because, again, there are no Delaware-directed acts that can be fairly imputed to the Colorado Defendants.

Plaintiffs also point to a forum selection clause in Partners' operating agreement (the "Partners Agreement") and attempt to stretch it into a source of

---

subject to Delaware jurisdiction as participants of a conspiracy against a Delaware corporation. But this would push conspiracy jurisdiction beyond constitutional limitations, on the facts here. This Court has personal jurisdiction over [the fiduciary] by dint of her statutorily-implied consent as a director of a Delaware corporation; but a conspirator aiding or abetting a breach of fiduciary duty that occurred entirely in Florida has not impliedly given his consent and would not have reasonably expected that his actions would cause him to be subject to jurisdiction in the company's state of incorporation.").

[81] *Slingshot Techs., LLC v. Acacia Rsch. Corp.*, 2021 WL 979539, at *3 (Del. Ch. March 15, 2021) (ORDER) (alterations, citations, and internal quotation marks omitted) (quoting *HMG/Courtland Props., Inc. v. Gray*, 729 A.2d 300, 308 (Del. Ch. 1999)). The *Slingshot* Court clarified that the alter ego theory invokes the Court's specific subject matter jurisdiction, meaning "the core question is whether a defendant has taken an action sufficient to support jurisdiction under the Delaware Long-Arm Statute." *Id.* at *3 (citing *Genuine Parts*, 137 A.3d at 127).

personal jurisdiction over the Colorado Defendants as Partners' investors. Section

12.4 of that agreement provides:

> Applicable Law. This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware, without regard to the principles of conflicts of law.
>
> Each of the Partners and each Person holding any beneficial interest in the Partnership:
>
> (1) irrevocably agrees that any claims, suits, actions or proceedings (A) arising out of or relating in any way to this Agreement (including any claims, suits or actions to interpret, apply or enforce the provisions of this Agreement or the duties, obligations or liabilities among Partners or of Partners to the Partnership, or the rights or powers of, or restrictions on, the Partners or the Partnership), (B) brought in a derivative manner on behalf of the Partnership, (C) asserting a claim of breach of a fiduciary duty owed by any director, officer, or other employee of the Partnership or the General Partner, or owed by the General Partner, to the Partnership or the Partners, (D) asserting a claim arising pursuant to any provision of the Act or (E) asserting a claim governed by the internal affairs doctrine shall be exclusively brought in the Court of Chancery of the State of Delaware, in each case regardless of whether such claims, suits, actions or proceedings sound in contract, tort, fraud or otherwise, are based on common law, statutory, equitable, legal or other grounds, or are derivative or direct claims;
>
> (2) irrevocably submits to the exclusive jurisdiction of the Court of Chancery of the State of Delaware in connection with any such claim, suit, action or proceeding . . . .[82]

---

[82] SAC, Ex. 4 § 12.4 [hereinafter "Partners Agr."].

Plaintiffs allege that Advisors, Dickey, Himes, and Mountain Rays are among Partners' limited partners, and thus subject to this agreement.[83] While a party may consent to the court's exercise of personal jurisdiction through a forum selection clause,[84] none of the claims against Himes or Mountain Rays "arise out of or relat[e] in any way" to the Partners Agreement.[85]

The claims against Himes and Mountain Rays are found in Counts III through VIII. All counts except Count VII use the defined term "Plaintiffs," which includes Partners, but do not mention Partners specifically. A closer inspection confirms that none of the claims relate to Partners or its business. Count III alleges misappropriation of trade secrets, which appear to be confidential business information owned by the Operating Entities—Holdings, RMCO, and Management.[86] The property allegedly misappropriated (Count IV) and converted

---

[83] SAC ¶¶ 39, 64, 221. These allegations are inconsistent with Schedule A of the Partners Agreement, which lists Advisors, Himes, and Scott A. Hillman, a Management employee, as the limited partners. *See* Partners Agr. Sched. A; *see also* SAC ¶ 118 (describing that Hillman is a Management employee and Dickey's direct report). The parties did not discuss this discrepancy in briefing. I take the allegations in the Second Amended Complaint as true for the purpose of the Motion, bearing in mind the possibility Plaintiffs inadvertently attached an outdated version of the Partners Agreement. Even assuming this clause binds Mountain Rays, it does not apply to the claims here.

[84] *See, e.g.*, *In re Pilgrim's Pride Corp. Deriv. Litig.*, 2019 WL 1224556, at *10 (Del. Ch. Mar. 15, 2019).

[85] Partners Agr. § 12.4.

[86] *See* SAC ¶¶ 128, 131–32; *see also id.* ¶¶ 103, 111. The declaratory judgment counts also allege that Dickey abused his position to "seize upon confidential, private, and valuable information of" Plaintiff entities other than Partners: Advisors (*id.* ¶ 275), GP (*id.* ¶ 289),

(Count V) also belonged to the Operating Entities.[87] Count VI for unjust enrichment is similarly grounded in conduct relating to entities downstream of Partners—interfering with business opportunities, comingling funds, using Management's employees—which falls outside the scope of the Partners Agreement.[88] Finally, Count VIII for civil conspiracy only alleges conduct directed at the Operating Entities, namely Management.[89] Plaintiffs fail to explain how any injury Himes and Mountain Rays caused to the Operating Entities in these counts arises from or relates to the Partners Agreement.

In a last-ditch effort, Plaintiffs argue that this Court's cleanup doctrine can cure any personal jurisdiction issues.[90] The cleanup doctrine is a component of this Court's subject matter jurisdiction.[91] It does not confer personal jurisdiction where it does not otherwise exist.

---

Management (*id.* ¶ 305), Midstream (*id.* ¶ 320), Holdings (*id.* ¶ 337), and RMCO (*id.* ¶ 356).

[87] *See, e.g.*, *id.* ¶¶ 128, 132–40.

[88] *See, e.g.*, *id.* ¶¶ 118, 132, 146, 149, 244.

[89] *See id.* ¶ 258.

[90] *See, e.g.*, *id.* ¶¶ 75–79, 100; *see also* D.I. 31 at 39–42.

[91] *E.g.*, *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016) ("The Court of Chancery also can obtain subject matter jurisdiction over purely legal claims through its clean-up doctrine. That doctrine, also known as ancillary jurisdiction, provides the Court of Chancery with jurisdiction to resolve purely legal causes of action that are before it as part of the same controversy over which the Court originally had subject matter jurisdiction in order to avoid piecemeal litigation." (citing Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 2.04, at 2-78 to -80 (2014))).

In sum, none of Plaintiffs' many theories establish a basis for exercising personal jurisdiction over the Colorado Defendants. Lacking any jurisdictionally significant contacts with Delaware, the Colorado Defendants are dismissed.

## B. Venue

Defendants argue that Holdings' operating agreement (the "Holdings Agreement") narrows the claims Plaintiffs can pursue in this Court.[92] "The proper procedural rubric for addressing a motion to dismiss based on a forum selection clause is found under Rule 12(b)(3), improper venue."[93] When addressing a motion under Rule 12(b)(3), "the court is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset."[94]

In *Ingres Corp. v. CA, Inc.*, the Delaware Supreme Court held that "where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause, even if, absent any forum selection clause, the [common law] principle might otherwise

---

[92] *See* D.I. 30 at 19–21; *see also* SAC, Ex. 5 [hereinafter "Holdings Agr."]. Defendants originally presented this issue as one of personal jurisdiction. At argument, counsel clarified that the Holdings Agreement's forum selection clause creates a venue, rather than jurisdictional, hurdle. *See* Hr'g Tr. 17:9–18:24. Based on that clarification, I consider Defendants' arguments under the appropriate rubric, Rule 12(b)(3).

[93] *Sylebra Cap. P'rs Master Fund, Ltd. v. Perelman*, 2020 WL 5989473, at *9 (Del. Ch. Oct. 9, 2020) (quoting *In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *4 (Del. Ch. July 2, 2018)).

[94] *Id.* (quoting *In re Bay Hills*, 2018 WL 3217650, at *4); *see also Simon v. Navellier Series Fund*, 2000 WL 1597890, at *4–5 (Del. Ch. Oct. 19, 2000).

require a different result."[95]  Such clauses "are presumptively valid and should be specifically enforced unless the resisting party clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching."[96]

Section 9.3 of the Holdings Agreement addresses the governing law and venue for disputes arising out of that agreement.  Section 9.3(a) is a choice of law provision favoring Delaware.[97]  Section 9.3(b) is a forum selection clause favoring Harris County, Texas:

---

[95] 8 A.3d 1143, 1145 (Del. 2010) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)); *see also Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381 (Del. 2013).

[96] *Sylebra*, 2020 WL 5989473, at *10 (alterations in original) (quoting *Ingres*, 8 A.3d at 1146).

[97] *See* Holdings Agr. § 9.3(a).

**Venue**. The Members hereby irrevocably submit to the exclusive jurisdiction of any federal or state court sitting in Harris County, Texas, and appropriate appellate courts therefrom, over any dispute arising out of or relating to this Agreement or any of the transactions contemplated hereby, and each Member hereby irrevocably agrees that all claims in respect of such dispute or proceeding may be heard and determined in such courts. The Members hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any dispute arising out of or relating to this Agreement or any of the transactions contemplated hereby brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Members agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. Each of the Members hereby consents to process being served by any Member to this Agreement in any suit, action, or proceeding of the nature specified in this Section by the mailing of a copy thereof in the manner specified by the provisions of this Agreement.[98]

Defendants argue that this provision prevents RMCO and Holdings from bringing claims in this Court that arise out of or relate to the Holdings Operating Agreement, specifically Count II, Count XIII, and Count XIV.

---

[98] *Id.* § 9.3(b).

By Section 9.3(b)'s plain terms, it binds Holdings' members (Midstream and Mercuria).[99] By operation of Delaware law, it also binds Holdings.[100] As a Holdings manager, Dickey may enforce the forum selection clause, even though he is not a signatory. As the Delaware Supreme Court held in *Ashall Homes Limited v. ROK Entertainment Group Inc.*, "officers and directors . . . have standing to invoke the Forum Selection Provision as parties closely related to one of the signatories such that the non-party's enforcement of the clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound."[101]

---

[99] The parties did not brief, and this decision does not consider, whether 6 *Del. C.* § 18-109(d) prohibits Midstream from waiving its right to maintain a legal action in Delaware. *See Li v. loanDepot.com, LLC*, 2019 WL 1792307, at *1–3 (Del. Ch. Apr. 24, 2019). Because Plaintiffs have not sought to avoid Section 9.3(b)'s enforcement on these grounds, and it is unclear whether Midstream, which may appoint two of Holdings' three managers under Section 3.2(a)(i) of the Holdings Agreement, is fairly characterized as a "member who is not a manager," I assume Section 9.3(b) is enforceable against Midstream, to the extent it makes the relevant claim in Count II.

[100] *See* 6 *Del. C.* § 18-101(9) ("A limited liability company is bound by its limited liability company agreement whether or not the limited liability company executes the limited liability company agreement."); *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 293 (Del. 1999) (holding that derivative claims by an LLC are subject to the forum selection clause in the LLC's operating agreement even though the LLC did not sign the operating agreement); *see also Seaport Vill. Ltd. v. Seaport Vill. Operating Co., LLC*, 2014 WL 4782817, at *1–2 (Del. Ch. Sept. 24, 2014) ("By statute, a limited liability company is a party to its own limited liability company agreement, regardless of whether the limited liability company executes its own limited liability company agreement.").

[101] 992 A.2d 1239, 1249 (Del. Ch. 2010) (internal quotation marks omitted) (quoting *BNY AIS Nominees Ltd. v. Quan*, 609 F. Supp. 2d 269, 275 (D. Conn. 2009), and compiling federal sources); *accord Phunware, Inc. v. Excelmind Gp. Ltd.*, 117 F. Supp. 3d 613, 629 (D. Del. 2015) ("First, the court must determine whether the contract's forum selection clause is valid. Then, the court must decide whether the party is a third-party beneficiary or closely related party to the agreement. Finally, the court must ascertain if the claims against the party arise from its status related to the agreement." (citations omitted) (citing

36

The forum selection clause governs Count II's claim that Dickey breached his contractual and fiduciary duties with respect to Holdings. As a threshold matter, while it is unclear whether the claim is asserted by Midstream as a member, or by Holdings itself, both entities are bound by the forum selection clause. Moreover, such a claim plainly "aris[es] out of or relat[es] to" the Holdings Agreement,[102] which defines Dickey's fiduciary and contractual duties to Holdings and its members.[103] Similarly, Count XIII, which seeks a declaratory judgment regarding

*Hadley v. Shaffer*, 2003 WL 21960406, at *4, *6 (D. Del. Aug. 12, 2003))). Dickey was identified in the Holdings Agreement as one of Midstream's designees on Holdings' board of managers. *See* Holdings Agr. 3.2(a)(i) & Ex. B. Dickey is thus "closely related" to Midstream, a signatory, such that his enforcement of the clause is foreseeable by virtue of that relationship. *See Ashall Homes*, 992 A.2d at 1249; *see also ASDC Hldgs., LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, 2011 WL 4552508, at *7 (Del. Ch. Sept. 14, 2011) (holding that non-signatory officers and directors of a signatory company could enforce the relevant forum selection clause against a signatory under *Ashall Homes*).

[102] Holdings Agr. § 9.3(b).

[103] *See id.* §§ 3.1 (delegating managerial authority to a "Board of Managers," describing the contours of the board's powers, and stipulating that each manager shall qualify as a "manager" under Section 18-101(10) of the LLC Act), 3.2 (describing the board's composition and requirements for board action), 3.5 (prohibiting the comingling of the company's funds), 3.7 (describing actions that require approval by a majority of the board), 3.9 (describing actions requiring unanimous board approval); *see also Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1148, 1150–52 (Del. Ch. 2006) (holding that breach of fiduciary duty claims against a manager of an LLC were covered by an arbitration clause in an LLC agreement that applied to "any dispute arising under or related to this Agreement (whether arising in contract, tort or otherwise, and whether arising at law or in equity)," where the LLC agreement delegated all managerial power to a board, defined the board's duties, described the board's composition, and stipulated that the board's members would be "managers" under the LLC Act). By its silence as to the managers' fiduciary duties, the Holdings Agreement imposes the default duties of care and loyalty. *E.g.*, *Mehra v. Teller*, 2021 WL 300352, at *28 (Del. Ch. Jan. 29, 2021) ("By default, limited liability company managers owe fiduciary duties akin to those owed by directors of a corporation.

Dickey's indemnification rights under Section 6.2 of the Holdings Agreement, also arises from that agreement.[104]  These claims must be pursued in Texas.[105]

Plaintiffs point out that Section 9.3(a) of the Holdings Agreement includes a choice of law provision favoring Delaware.[106]  That the parties agreed that Delaware law would govern their dispute does not change my conclusion on venue, as Section 9.3(a) does not address what court should hear the dispute.  Rather, the parties agreed in Section 9.3(b) that Harris County, Texas would be the "exclusive jurisdiction" for claims arising from the Holdings Agreement.[107]  That agreement must be enforced.[108]

***

In sum, this Court has personal jurisdiction over Dickey to adjudicate Counts I and II related to his service as a fiduciary of Advisors, GP, Management, and Partners, as well as the related claims in Counts III through XIV.  The Court does

---

Although Delaware law permits a limited liability company to eliminate fiduciary duties in the governing agreement, the LLC Agreement does not do so." (footnotes omitted) (citing 6 *Del. C.* § 18-1104, and then citing 6 *Del. C.* § 18-1101(e))).

[104] *See* Holdings Agr. § 6.2; *see also id.* § 6.1.

[105] Defendants also argue this clause means RMCO's claims in Counts II and XIV are also covered by this clause.  Because this Court does not have personal jurisdiction over Dickey to adjudicate those claims, I do not address whether the forum selection clause in the Holdings Agreement impacts the venue in which those claims may be heard.

[106] Holdings Agr. § 9.3(a).

[107] *Id.* § 9.3(b).

[108] *Carlyle*, 67 A.3d at 381 ("A valid forum selection clause must be enforced.").

not have personal jurisdiction over Dickey to adjudicate claims by Midstream and RMCO. This Court also lacks personal jurisdiction over the Colorado Defendants. Finally, the claims in Counts II and XIII, to the extent they arise from the Holdings Agreement, must be dismissed for improper venue and must be adjudicated in Harris County, Texas.

### C. Dismissing The Colorado Defendants May Create A Problem Under Rule 19.

At this juncture, the Colorado Defendants—five of the Second Amended Complaint's seven named Defendants—are not subject to this Court's personal jurisdiction and cannot be feasibly joined. This Court has dismissed all of a plaintiff's claims after determining it lacks personal jurisdiction over an indispensable party.[109] The parties did not brief whether Court of Chancery Rule 19 compels a similar result here. Supplemental briefing by the parties will be helpful in deciding this issue.

Rule 19(a) governs whether a party must be joined to an action—whether that party is "necessary." It provides:

---

[109] *See Baier*, 2018 WL 1791996, at *10 n.101 (citing *Sergerson v. Del. Tr. Co.*, 1979 WL 174436, at *3 (Del. Ch. Oct. 5, 1979)); *see also* Ct. Ch. R. 19.

**Persons to Be Joined if Feasible.**  A person who is subject to service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.[110]

When there are necessary parties which cannot feasibly be joined, such as those who are not subject to service of process or those over whom personal jurisdiction is not available, the Court must determine whether the action can proceed in their absence.

Rule 19(b) explains:

**Determination by Court Whenever Joinder Not Feasible.**  If a person as described in paragraph (a)(1) and (2) hereof cannot be made a party, the Court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.  The factors to be considered by the Court include:  First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.[111]

---

[110] Ct. Ch. R. 19(a).

[111] Ct. Ch. R. 19(b).

These circumstances present the question of whether the Colorado Defendants are necessary parties for the remaining counts and, if so, "whether in equity and good conscience" the remaining claims against Dickey can proceed in their absence.

The parties shall confer on a stipulated schedule to provide supplemental submissions on this issue. Those submissions should address whether any or all of Plaintiffs' claims against Dickey should be dismissed under Rule 19. Some claims, such as Count VIII for civil conspiracy, likely cannot go on without the other alleged co-conspirators before the Court. For other claims, such as Counts I and II, the analysis may be more nuanced. I expect the parties' submissions will be relatively brief, under 5,000 words.

I also note that the pending Motion also argues that several counts of the Second Amended Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. Until the Rule 19 issue is resolved, I will hold my consideration of the Second Amended Complaint's merits in abeyance, as it would be improper to pass on the substance of claims that in equity and good conscience may need to be dismissed and heard elsewhere.

## III. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** in part. The Colorado Defendants are dismissed for lack of personal jurisdiction. Personal jurisdiction over Dickey is limited as described above. The claims against Dickey relating to

Holdings in Counts II and XIII must be pursued in Harris County, Texas.  The parties shall confer on a stipulated schedule to present supplemental submissions on the Rule 19 issue.  Once the Court receives those submissions, I will take that issue, and the remainder of the Motion, under advisement.